1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8
    FRANK ROQUE,                      )
9                                     )
              Petitioner,             )    CIV 08-02154 PHX PGR (MEA)
10                                    )
              v.                      )    REPORT AND RECOMMENDATION
11                                    )
    CHARLES L. RYAN and               )
12  ARIZONA ATTORNEY GENERAL,         )
                                      )
13            Respondents.            )
    _____ )
14

15  TO THE HONORABLE PAUL G. ROSENBLATT:

16          On or about November 20, 2008, Petitioner filed a *pro*

17  *se* petition seeking a writ of habeas corpus pursuant to 28

18  U.S.C. § 2254.  Petitioner filed an amended petition on February

19  5, 2009.  See Docket No. 14.  Respondents filed an Answer to

20  Petition for Writ of Habeas Corpus ("Answer") (Doc. 20) on April

21  13, 2009.  Petitioner filed a reply to the answer to his

22  petition on August 5, 2009.  See Docket No. 44.

23          **I Procedural History**

24          On September 25, 2001, a Maricopa County grand jury

25  indicted Petitioner on one count of first-degree murder in the

26  death of Mr. Balbir Singh Sodhi on September 15, 2001 (Count 1).

27  See Answer, Exh. I.  Petitioner was also charged with three

28  counts of drive-by shooting, involving a Mobil gas station

(Count 6), the shooting of Mr. Sodhi in front of a Chevron gas station (Count 2), and a shooting at a private residence in Mesa previously owned by Petitioner (Count 7). See id., Exh. I. The grand jury further indicted Petitioner on three counts of attempted first-degree murder, naming as victims Anwar Khalil (Count 3), Leali Chamseddine (Count 4), and Ali Khein (Count 5). The indictment also charged Petitioner with three counts of reckless endangerment, naming as victims Louis Ledesma (Count 8), Jesus Ledesma (Count 9), and Jose Valencia (Count 10). Id., Exh. I.

The state subsequently filed a notice of intent to seek the death penalty if Petitioner was convicted of first-degree murder in the death of Mr. Sodhi. Id., Exh. K. Two of the attempted murder counts and two of the reckless endangerment counts were later dismissed. Id., Exh. F & Exh. L.[1]

Prior to trial, on March 22, 2002, Petitioner's counsel filed a motion pursuant to Rule 11, Arizona Rules of Criminal Procedure, requesting a hearing to evaluate Petitioner's mental competence to stand trial. See id., Exh. KK. The prosecution and the defense subsequently stipulated that the trial court could determine Petitioner's competency to stand trial based upon the reports of two appointed experts, Dr. Jack Potts and

_____

[1] The amended indictment on which Petitioner was tried was comprised of Count 1, the first-degree murder of Mr. Sodhi; Count 2, the drive by shooting at the Chevron station; Count 3, the attempted first degree murder of Mr. Khalil; Count 4, the drive by shooting at the Mobil; Count 5, the drive by shooting at the private residence; Count 6, the reckless endangerment of Mr. Ledesma. See Answer, Exh. L at 100-02 & Exh. F at 4.

Dr. Michael Colfield. <u>Id.</u>, Exh. LL. At the time Petitioner requested a competency determination, he had been prescribed and was being medicated with Zyprexa, an anti-psychotic medication. <u>Id.</u>, Exh. KK.

Both experts found Petitioner competent to stand trial. <u>Id.</u>, Exh. MM. After reviewing the experts' reports, on May 28, 2002, the state trial court concluded that Petitioner understood the proceedings and was able to assist counsel with his defense. Accordingly, the state trial court determined Petitioner was mentally competent to stand trial, citing Arizona Revised Statutes § 13-4510(B). <u>Id.</u>, Exh. MM.

The presentation of evidence to the jury in Petitioner's trial began on or about September 2, 2003. <u>Id.</u>, Exh. F. Mr. Ledesma, a witness to the shooting of Mr. Sodhi, testified that he was in front of the Chevron station showing Mr. Sodhi a problem with a landscaping water line when he heard tires squealing. <u>Id.</u>, Exh. F at 64-65 & 67. Mr. Ledesma testified he then heard Mr. Sodhi say "Don't shoot me", and then he heard gunshots. <u>Id.</u>, Exh. F. Mr. Ledesma testified that he was more or less kneeling on the ground about one and a half feet from Mr. Sodhi at the time the shots were fired. <u>Id.</u>, Exh. F at 68. Mr. Ledesma testified that, after the first shot was fired, he saw that Mr. Sodhi had been shot in the stomach. <u>Id.</u>, Exh. F at 68. Mr. Ledesma testified that he then flung himself prone onto the ground. <u>Id.</u>, Exh. F at 68. Mr. Ledesma testified that Mr. Sodhi fell to the ground after the second or third gunshot. <u>Id.</u>, Exh. F at 69. Mr. Ledesma testified that

when he looked up he saw a black truck speeding away. _Id._, Exh. F at 69. Mr. Ledesma testified that he did not see the individual who fired the gunshots which struck Mr. Sodhi. _Id._, Exh. F at 69.

A witness to the shooting of Mr. Sodhi at the Chevron station testified that between one and three in the afternoon he was in his vehicle on a street adjacent to the Chevron station when he heard three gunshots and saw Mr. Sodhi fall to the ground. _Id._, Exh. F at 83. The witness testified that the shots appeared to come from a black Chevrolet S10 truck at a distance from Mr. Sodhi of twenty or thirty feet, and that the truck sped off after Mr. Sodhi was shot. _Id._, Exh. F at 83-84.

Mr. Ahmed Sahak, who had purchased a house in Mesa from Petitioner in late 1998, testified that around 3 p.m. on September 15, 2001, he and his wife were about to leave their house when they heard gunshots. _Id._, Exh. G at 17 & 19. Mr. Sahak testified he looked outside through a window and saw a man in a dark pick-up truck putting down a weapon in the truck. _Id._, Exh. G at 20. Mr. Sahak testified that he did not recognize the man in the truck as Petitioner and that Petitioner had a beard on September 15, 2001, but did not have a beard in 1998 when Mr. Sahak had purchased the house. _Id._, Exh. G at 20-21.

Several witnesses, including Mr. Anwar Khalil, testified that at approximately 2:45 p.m. on Saturday, September 15, 2001, a man in a black truck fired from the truck into a combination Mobil gas station and sandwich shop on University

-4-

Drive at Val Vista in Mesa, Arizona. <u>Id.</u>, Exh. A at 50-52 (testimony of Ms. Andrews) & 70-72 (testimony of Ms. Benchley), Exh. B at 45-47 (testimony of Mr. Khalil). Mr. Khalil testified that he was injured by glass fragmented from a light fixture by the shooting. <u>Id.</u>, Exh. B at 46-47 & 55.

The state offered evidence from police detectives, crime scene investigators, and a ballistics expert, that the bullets which struck Mr. Sodhi and the bullets that were fired into the Mobil station and at the house in Mesa were fired from weapons found in Petitioner's house and that shell-casings from the guns found in the house were found in Petitioner's black Chevrolet S10 truck, which Petitioner was seen driving on September 15, 2001. <u>Id.</u>, Exh. A at 181-93, Exh. G at 26-43, Exh. B at 103-06 & 115-30.

The government's case in chief focused on establishing that the murder of Mr. Sodhi was premeditated. The government presented testimony that Petitioner was very upset by the events of September 11, 2001. Several witnesses testified Petitioner had expressed animus towards the ethnic group he believed responsible for the events of September 11, 2001. <u>Id.</u>, Exh. A at 86-87 & 105-07. Several of Petitioner's co-workers testified regarding Petitioner's emotional response to the events of September 11, 2001. <u>See id.</u>, Exh. A at 25-27, 86-87 & Exh. B at 23, 38-39, 42. The state also offered testimony from two of Petitioner's co-workers that Petitioner had told them he had "a hard time" with a man who worked at a gas station on Broadway who was "probably Indian". <u>See id.</u>, Exh. B at 12-13 & 27. The

government also presented a witness who worked at an Applebee's restaurant visited by Petitioner on September 11, 2001, who testified that on that date Petitioner, who was extremely upset, had used the derogatory term "towelhead" to refer to people of Middle Eastern heritage. Id., Exh. C at 18-22 (testimony of Mr. Sewell). The government also presented witnesses who encountered Petitioner at three different bars on the date of the crime, i.e., the Wild Hare, Famous Sam's, and the Papillon Too. Id., Exh. A at 124-46 & 146-61; Exh. C at 17-26; Exh. D at 61-85; Exh. E at 6-32.

Defense counsel was successful in discrediting some of the prosecution's evidence of premeditation. A police detective, Steve Casillas, testified that when he had interviewed Ms. Baldenegro she told him she did not see Petitioner get in his truck and leave the Wild Hare on September 15, 2001, contradicting her testimony on the stand at the trial. Id., Exh. E at 102-04. Upon questioning by defense counsel, Detective Casillas testified that he had garnered Petitioner's Mobil, Chevron, and Discover credit card records and that, within the six months prior to the date of the crimes, there was no evidence Petitioner had purchased gasoline at either the Mobil station or the Chevron station where the crimes occurred on September 15, 2001. Id., Exh. E at 82 & 104-08. This evidence contradicted the coworker's statement that Petitioner had told him he had trouble with a person who wore a turban that worked in a gas station Petitioner patronized. The detective testified that, although there was no evidence Petitioner had

purchased gasoline at either of the stations involved in the crimes within that six month time period, Petitioner had used his Mobil and Chevron credit cards at other Chevron and Mobil stations in that area during that time period. Id., Exh. E at 83-84 & 107-08. Additionally, the detective testified he first contacted Petitioner at about 9 p.m. on September 15, 2001, and that he was with Petitioner until about 11:30 p.m., and that during that time period he saw no sign of intoxication. Id., Exh. E at 109-10.

At the close of the state's case Petitioner's counsel moved for a judgment of acquittal on the charge of reckless endangerment with regard to Mr. Ledesma (Count 6 of the amended indictment), asserting the state had failed to present sufficient evidence to sustain the charge against Petitioner. Id., Exh. C at 33. The motion was denied. Id.

In addition to challenging the legal sufficiency of the state's evidence with regard to Count 6, Petitioner presented a defense of guilty-except-insane. E.g., id., Exh. L at 68. In support of this defense Petitioner introduced evidence from his sister and his brother that their mother suffered from and had been hospitalized for schizophrenia. Id., Exh. C at 37-95 & 106-89. Petitioner's sister and his brother both testified they had observed behavior indicating Petitioner also suffered from mental illness from the time he was an adolescent. Id., Exh. C at 37-95 & 106-89. Petitioner's brother testified that he spoke with Petitioner by telephone on September 15, 2001, and that on that day his brother was incoherent and so emotionally unstable

that Petitioner's brother contacted police because he feared Petitioner would harm himself. Id., Exh. C at 123-29. Petitioner's daughter also testified as to her father's state of mind the week of September 11, 2001, and his uncharacteristic extreme agitation on September 15, 2001. Id., Exh. C at 190-21 & Exh. M at 152-71 & Exh. N at 4-24.

The defense presented the testimony of two psychological experts, Dr. Philip Barry and Dr. Richard Rosengard, regarding Petitioner's mental condition at the time of the crimes. Id., Exh. M at 9-151 & Exh. N at 5-103. Dr. Barry, a psychologist, testified that prior to examining Petitioner in May of 2003 he had reviewed the reports of Dr. Scialli and Dr. Rosengard. Id., Exh. M at 14. Dr. Barry testified he had administered, *inter alia*, the MMPI (Minnesota Multi-phasic Personality Inventory) to Petitioner, by reading the questions to Petitioner and recording his answers, which was not the standard methodology for performing that test. Id., Exh. M at 26-30. Dr. Barry testified he had administered an IQ test and that Petitioner's IQ was below average. Id., Exh. M at 34.

Dr. Barry testified his testing indicated Petitioner had a "schizotypal" personality disorder. Id., Exh. M at 40-42 & 43. Dr. Barry testified that Petitioner had experienced a "psychotic episode" on the day of the crimes, which episode was precipitated by the events occurring on September 11, 2001. Id., Exh. M at 42-44, 49-52.

Dr. Rosengard testified he had examined Petitioner in February and March of 2002. Id., Exh. N at 38. Dr. Rosengard, a forensic psychiatrist, disagreed with Dr. Barry's diagnosis, and testified Petitioner suffered from major affective disorder with psychotic features. Id., Exh. N at 73 & 76-77. Dr. Rosengard agreed with Dr. Barry that Petitioner was not legally responsible for his crimes at the time of the crimes. Id., Exh. N at 41, 50, 69-77, 82-85.

An independent forensic psychological expert, Dr. Potts, called by the prosecution in rebuttal, testified that in his opinion Petitioner was legally sane at the time of the crimes. Id., Exh. D at 134, 138, 142-43, 146-47. Dr. Potts examined Petitioner in 2003 on two separate occasions for two hours each time. Id., Exh. D at 102-03 & 116. Dr. Potts averred Petitioner told him that, on September 13, 2001, Petitioner had heard a voice telling him to "kill the devils". Id., Exh. D at 123. Dr. Potts testified this statement was consistent with what Petitioner had told Dr. Scialli and Dr. Rosengard, i.e., Petitioner told these individuals he heard a voice telling him to "kill the devils" on September 13. Id., Exh. D at 123.

Dr. Toma, a psychologist, testified he had performed a second MMPI-2 test on Petitioner in August of 2003. Id., Exh. O. Dr. Toma testified he had been asked to administer the test to Petitioner because of the arguable validity of the first MMPI test administered by Dr. Barry. Dr. Toma testified some mental health experts believed the test should not be administered by

-9-

the expert reading the test to the subject and recording their answers. Id., Exh. O.

Dr. John Scialli, a medical expert called by the state, testified at Petitioner's trial that he had examined Petitioner twice in 2002. Id., Exh. O at 96 at Exh. H at 76. Dr. Scialli testified that shortly after Petitioner was incarcerated in the Madison Avenue Jail pending his trial, Petitioner was prescribed Zyprexa by a different doctor, i.e., the physician attending the inmates at the jail. Id., Exh. H. Dr. Scialli testified that, when he examined Petitioner in 2002, Petitioner did not appear to be psychotic at that time. Id., Exh. O at 76. This expert witness opined Petitioner did not fit the medical diagnosis to warrant prescribing Zyprexa, i.e., that Petitioner did not suffer from schizophrenia or manic episodes with grandiose behavior as those terms are represented in the DSM IV. Id., Exh. O at 75.

Dr. Scialli testified that, in his opinion Petitioner did not suffer from bipolar disorder with psychosis. Id., Exh. O at 72. Dr. Scialli testified Petitioner did not need to be on Zyprexa. Dr. Scialli did allow that Petitioner had said he heard voices. Id., Exh. O at 76.

Dr. Scialli further testified that, at the time of the crimes, the only disorder Petitioner suffered from was alcohol dependence, with possibly an adjustment disorder with depressed mood. Id., Exh. O at 78-79. Dr. Scialli opined Petitioner had committed the crimes while suffering a strong reaction to a situational "stressor", i.e., the events of September 11, 2001.

-10-

Id., Exh. O at 79.  Dr. Scialli opined that, at the time of the crimes, Petitioner was not having hallucinations.  Id., Exh. O at 80-82.

Dr. Scialli also testified that Petitioner knew that what he was doing was wrong, as evidenced by his subsequent evasiveness, i.e., speeding away in his car after committing crimes.  Id., Exh. O at 82.  The doctor stated: "Someone who's delusional doesn't have a particular reason to get away."  Id., Exh. O at 82.  Additionally, Dr. Scialli noted in his testimony that Petitioner did not start talking about having "command" hallucinations until conversations with investigators at the end of September.  Id., Exh. O at 83-84.

Dr. Scialli disagreed with Dr. Barry that Petitioner suffered from schizotypal personality disorder.  Id., Exh. O at 86.  Dr. Scialli also disagreed with Dr. Rosengard's diagnosis of recurring major depressive disorder.  Id., Exh. O at 86.  Dr. Scialli gave detailed testimony as to why he had concluded Petitioner was not suffering from a definable mental disorder and these disorders specifically.  Dr. Scialli testified that, at the time of the crimes, Petitioner did not fall within the legal definition for insanity.  Additionally, Dr. Scialli testified he thought it was possible Petitioner was faking or exaggerating any mental disease.  Id., Exh. O at 95-96 & Exh. H at 20.

Ms. Amy Woods, a counselor at the jail where Petitioner was incarcerated pending his trial, testified she interviewed Petitioner on September 17, 2001.  Id., Exh. O at 72-86.  She

-11-

stated Petitioner did not complain of hearing voices at that time.  Ms. Woods testified Petitioner denied he had said he heard voices coming from a television set.  Exh. O at 80.

The jury was instructed, *inter alia*, that it was Petitioner's burden to establish his insanity at the time of the crimes by clear and convincing evidence, stating Petitioner bore the burden of providing evidence it was "highly probable that the defendant was insane.  This is a lesser standard of proof than beyond a reasonable doubt."  Id., Exh. L at 99.  The jury was dismissed to begin deliberations on the afternoon of September 29, 2003.  Id., Exh. I.  The jury returned with a verdict at approximately 11:45 a.m. on September 30, 2003, having deliberated that morning since 9 a.m.  Id., Exh. P.

The jury found Petitioner guilty of the murder of Mr. Sodhi, guilty on one count of attempted murder, and guilty on one count of reckless endangerment.  Id., Exh. P.  The jury also found Petitioner guilty on three counts of drive-by shooting.  Id., Exh. P.  Additionally, the jury found that the government had established that the murder, attempted murder, and drive-by shootings were all dangerous offenses.  Id., Exh. P & Exh. Q.  The jury also found the existence of another aggravating factor, i.e., a grave risk of death to Mr. Ledesma.  Id., Exh. P & Exh. Q.[2]

---

[2] As stated supra, Mr. Ledesma was next to Mr. Sodhi but closer to the ground, i.e., kneeling on the ground while Mr. Sodhi stood, when Mr. Sodhi was shot.  Mr. Ledesma testified at Petitioner's trial that he was not injured during the shooting.

A hearing regarding Petitioner's sentences for his capital crime was conducted on October 7 and October 8, 2003. Id., Exh. R, Exh. S, Exh. GG, Exh. PP, Exh. QQ. The jury determined that the evidence offered in mitigation was insufficient to call for leniency with regard to the sentence to be imposed for the murder conviction. Id., Exh. R & Exh. S. Accordingly, on October 9, 2003, Petitioner was sentenced to death pursuant to his conviction for the murder of Mr. Sodhi. Id., Exh. S at 9-11. The trial court subsequently imposed aggravated sentences as to each of the other counts of conviction. Id., Exh. T. At the hearing regarding the remaining sentences to be imposed, the state asked the trial court to aggravate the sentences because the victims were targeted based on their race or religion. Exh. T. The state also asked for aggravation on Count 2 because that drive-by shooting resulted in the death of Mr. Sodhi. The state asked for aggravation on Petitioner's conviction on the charge of endangerment because the commission of that crime involved the use of a weapon. Id., Exh. T at 5.

The state trial court concluded the sentences on Counts 2 and 6 could be aggravated by the fact of conviction on Counts 3, 4, and 5. Id., Exh. T at 6. The court determined that Counts 3 and 4 could be aggravated based on the fact of Petitioner's convictions on Counts 1, 2, 5, and 6. Id., Exh. T at 6.

Petitioner took a direct appeal of his convictions and sentences to the Arizona Supreme Court. Id., Exh. U. In his

-13-

direct appeal Petitioner alleged that the state wrongfully discriminated in choosing a jury by using a peremptory strike on a prospective African American jury venireman. Petitioner also argued the trial court should have precluded Dr. Ben Porath's testimony regarding the ultimate issue of Petitioner's insanity, based on the state's failure to disclose the scope of the expert's testimony.

Additionally, Petitioner asserted that the admission of certain videotaped statements violated the Confrontation Clause. Petitioner further maintained that there was insufficient evidence to support the jury's finding of the "grave risk of death" aggravating factor with regard to the charge of reckless endangerment of Mr. Ledesma. Petitioner also alleged the trial court abused its discretion by allowing a juror to remain on the panel after contact with a media outlet. Id., Exh. U.

The Arizona Supreme Court affirmed all of Petitioner's convictions and the non-capital sentences in a lengthy decision issued August 14, 2006. See Answer, Exh. V. See also Arizona v. Roque, 213 Ariz. 193, 141 P.3d 368 (2006) (en banc). Reviewing Petitioner's capital sentence pursuant to his conviction for murder, the Arizona Supreme Court exercised its discretion to independently review the aggravating circumstances and the mitigation evidence. See Answer, Exh. V. Upon conclusion of this review, the Arizona Supreme Court reduced Petitioner's sentence on the murder conviction from death to life imprisonment without the possibility of release. Id., Exh. V.

On September 6, 2006, Petitioner initiated an action for state post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure. Id., Exh. W. In his Rule 32 action Petitioner raised fifty claims for relief including, *inter alia*, that his rights were violated by the use of a stun belt during his trial. Petitioner also asserted there was prosecutorial and juror misconduct during his trial. Petitioner further argued he was denied his right to the effective assistance of trial counsel and appellate counsel, and also alleged his convictions should be vacated because he was forced to take anti-psychotic medication during his trial. Id. Exh. W. Petitioner did not seek appointment of counsel in his Rule 32 action but averred to the state court that he wished to proceed *pro se* in that matter.

On May 18, 2007, the state trial court summarily dismissed Petitioner's post-conviction action pursuant to Rule 32.6(c), Arizona Rules of Criminal Procedure. Id., Exh. Y.[3] The

_____

[3] This subsection provides:
Summary Disposition. The court shall review the petition within twenty days after the defendant's reply was due. On reviewing the petition, response, reply, files and records, and disregarding defects of form, the court shall identify all claims that are procedurally precluded under this rule. If the court, after identifying all precluded claims, determines that no remaining claim presents a material issue of fact or law which would entitle the defendant to relief under this rule and that no purpose would be served by any further proceedings, the court shall order the petition dismissed. If the court does not dismiss the petition, the court shall set a hearing within thirty days on those claims that present a material issue of fact or law. If a hearing is ordered, the state shall notify the

-15-

Superior Court concluded Petitioner had failed to raise a colorable issue of fact or law entitling him to relief or warranting further proceedings. Id., Exh. Y. Petitioner appealed this decision to the Arizona Court of Appeals, which denied relief on March 14, 2008. Id., Exh. AA. Petitioner sought review by the Arizona Supreme Court, which denied review on June 13, 2008. Id., Exh. CC.

In his amended petition for habeas relief before the District Court, filed February 5, 2009, Petitioner asserts:

1. The state violated his right to due process of law by withholding exculpatory evidence regarding his blood alcohol level at the time of the offenses;

2. His right to due process of law and his right to a fair trial were violated when the state failed to fully disclose the content of an expert witness' rebuttal testimony;

3. He was denied a fair trial as a result of juror misconduct;

4. He was incompetent to stand trial *inter alia* because he was on anti-psychotic medication at the time of trial;

5. His constitutional right to confront the witnesses against him was violated;

6. He was denied the ability to assist and confer with his defense counsel because he was required to wear a stun belt during his trial;

victims, upon the victims' request pursuant to statute or court rule relating to victims' rights, of the time and place of the hearing.

7. His constitutional right to due process of law was violated by the introduction of autopsy photographs as evidence;

8. His right to due process of law was violated by the introduction of evidence regarding a prior conviction;

9. He was subjected to 22 specific instances of prosecutorial misconduct, the cumulative effect of which was to violate his right to a fair trial;

10. He was denied a fair trial as a result of testimony by Dr. Jack Potts;

11. His trial and appellate counsel were both unconstitutionally ineffective, in violation of his Sixth Amendment rights;

12. The indictment was defective because it failed to allege aggravating factors and because the prosecution was granted a sixty-day continuance to consult the government of India regarding its opinion on imposition of the death penalty;

13. There was insufficient evidence presented at trial to support Petitioner's convictions for drive-by shooting and the finding of premeditation on the charge of attempted first-degree murder;

14. His rights were violated because the state failed to prove the aggravating factors beyond a reasonable doubt. See Docket No. 14.

Respondents allow that the section 2254 habeas petition is timely filed. Respondents assert that Petitioner did not properly exhaust all of his federal habeas claims in the state courts. See Docket No. 20. Respondents argue that because

Petitioner did not present nine of his habeas claims to the Arizona Supreme Court in his action for post-conviction relief, Petitioner has procedurally defaulted those claims. Respondents maintain that, to fully exhaust these claims, Petitioner was required to raise the claims to the state Supreme Court in addition to the state Court of Appeals because Petitioner was originally sentenced to death, rather than life imprisonment. Respondents allow that, at the time Petitioner's post-conviction action was heard by the Arizona Court of Appeals, Petitioner stood sentenced to life imprisonment.

In reply to the answer to his habeas petition, Petitioner asserts that there was no proper evidence that he was intoxicated at the time of the crimes and that, at the time of the crimes, he heard "voices from God telling him to kill devils." Docket No. 44 at 3. Petitioner asserts that, at the time of the crimes, he was "suffering severe decompesation (sic) due to 9-11 events". Id. Petitioner re-argues and characterizes the evidence and testimony presented at his trial. Petitioner notes evidence presented at trial indicated his mother was a schizophrenic and that Petitioner suffered from mental illness prior to reaching adulthood. Petitioner states: "Both defense experts concluded Petitioner was legally insane at the time of the offenses." Id. at 6.

Petitioner further argues that his fourteenth claim for relief includes the allegation that his sentence violates the holding of Blakely v. Washington. Petitioner contends he has "suffered 'cause and prejudice'", citing Dretke v. Haley and

-18-

<u>Teaque v. Lane</u>.   Petitioner alleges that he was improperly sentenced to aggravated terms of imprisonment on Counts 1 through 6 pursuant to a preponderance of the evidence standard, rather than having the aggravating factors found by a jury. Accordingly, Petitioner argues, the holding of <u>Blakely</u> dictates a finding of prejudice.   Petitioner also alleges that he has exhausted his tenth, eleventh, and thirteenth grounds for habeas relief by raising these claims to the Arizona Supreme Court in a supplemental brief filed February 13, 2006.   Petitioner also asserts he exhausted grounds 2, 5, 7, 9, and 10 through 14 of his federal habeas petition by raising them in his direct appeal.

With regard to the exhaustion of claims raised in his state action for post-conviction relief, Petitioner contends the state trial court's "denial to review the 50 claims raised on P.C.R. does not specifically state a procedural default for failure to fairly present the claim."   <u>Id.</u> at 14.   Petitioner asserts that Rule 32.2(a)(3) of the Arizona Rules of Criminal Procedure is not an adequate and independent basis for denying federal habeas relief and that this rule is not regularly enforced.[4]

_____

[4]
Arizona Rule of Criminal Procedure 32.2(a)(3) precludes post-conviction relief based on any ground "waived at trial, on appeal, or in any previous collateral proceeding."   Claims predicated on "a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence," Ariz. R. Crim. P. 32.1(g), are excluded from the general rule of

**II Analysis**

**A. Exhaustion and procedural default**

The District Court may only grant federal habeas relief on the merits of a claim which has been exhausted in the state courts. See O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999); Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 2554-55 (1991). To properly exhaust a federal habeas claim the petitioner must afford the state the opportunity to rule upon the merits of the claim by "fairly presenting" the claim to the state's "highest" court in a procedurally correct manner. See, e.g., Castille v. Peoples, 489 U.S. 346, 351, 109 S. Ct. 1056, 1060 (1989); Rose v.Palmateer, 395 F.3d 1108, 1110 (9th Cir. 2005).[5]

The Ninth Circuit Court of Appeals has concluded that, in cases arising in Arizona in which the sentence imposed is not a capital sentence, the "highest court" test of the exhaustion requirement is satisfied if the habeas petitioner presented his claim to the Arizona Court of Appeals, either on direct appeal or in a petition for post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999). See also Paige v. Schriro, 648 F. Supp. 2d 1151, 1168-69 (D. Ariz. 2009)

preclusion under certain circumstances, Ariz. R. Crim. P. 32.2(b). Arizona v. Shrum, 220 Ariz. 115, 116, 203 P.3d 1175, 1176 (2009).

[5] Prior to 1996, the federal courts were required to dismiss a habeas petition which included unexhausted claims for federal habeas relief. However, section 2254 now states: "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2) (1994 & Supp. 2009).

-20-

(providing a thorough discussion of what constitutes the "highest court" in Arizona for purposes of exhausting a habeas claim in the context of a conviction resulting in a non-capital sentence and a sentence of life imprisonment); <u>Crowell v. Knowles</u>, 483 F. Supp. 2d 925, 932 (D. Ariz. 2007).

At the time of his direct appeal Petitioner faced a capital sentence and at the time of his Rule 32 action Petitioner faced a life sentence. Accordingly, any claim not presented to the Arizona Supreme Court in Petitioner's direct appeal or to the Arizona Court of Appeals in his Rule 32 action was not completely exhausted. See <u>Paige</u>, 648 F. Supp. 2d at 1168-69. Therefore, to the extent Respondents contend that Petitioner did not exhaust all of his habeas claims because some of his claims were not presented to the Arizona Supreme Court in Petitioner's Rule 32 action, the Magistrate Judge rejects this argument, finding the thorough reasoning of <u>Paige</u> persuasive.

To satisfy the "fair presentment" prong of the exhaustion requirement, the petitioner must present "both the operative facts and the legal principles that control each claim to the state judiciary." <u>Wilson v. Briley</u>, 243 F.3d 325, 327 (7th Cir. 2001). See <u>also</u> <u>Kelly v. Small</u>, 315 F.3d 1063, 1066 (9th Cir. 2003). In order to fulfill exhaustion requirements, a petitioner must present to the state courts the "substantial equivalent" of the claim presented in federal court. <u>Picard v. Connor</u>, 404 U.S. 270, 278, 92 S. Ct. 509, 513-14 (1971); <u>Libberton v. Ryan</u>, 583 F.3d 1147, 1164 (9th Cir. 2009).

Full and fair presentation requires a petitioner to

have presented the substance of his federal habeas claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief. See Scott v. Schriro, 567 F.3d 573, 582 (9th Cir.), cert. denied, 130 S. Ct. 1014 (2009); Lopez v. Schriro, 491 F.3d 1029, 1040 (9th Cir. 2007). Although a habeas petitioner need not recite "book and verse on the federal constitution" to fairly present a claim to the state courts, Picard, 404 U.S. at 277-78, 92 S. Ct. at 512-13, they must do more than present the facts necessary to support the federal claim. See Anderson v. Harless, 459 U.S. 4, 6, 103 S. Ct. 276, 277 (1982).

A federal habeas petitioner has not exhausted a federal habeas claim if he still has the right to raise the claim "by any available procedure" in the state courts. 28 U.S.C. § 2254(c) (1994 & Supp. 2009). Because the exhaustion requirement refers only to remedies still available to the petitioner at the time they file their action for federal habeas relief, it is satisfied if the petitioner is clearly procedurally barred from pursuing their claim in the state courts. See Woodford v. Ngo, 548 U.S. 81, 92-93, 126 S. Ct. 2378, 2387 (2006); Castille, 489 U.S. at 351, 109 S. Ct. at 1060. If it is clear the habeas petitioner's claim is procedurally barred pursuant to state law, the claim is exhausted by virtue of the petitioner's "procedural default" of the claim. See, e.g., Woodford, 548 U.S. at 92-93, 126 S. Ct. at 2387.

> We recognize two types of procedural bars: express and implied. An express procedural bar occurs when the petitioner has presented

-22-

his claim to the state courts and the state courts have relied on a state procedural rule to deny or dismiss the claim. An implied procedural bar, on the other hand, occurs when the petitioner has failed to fairly present his claims to the highest state court and would now be barred by a state procedural rule from doing so.

Robinson v. Schriro, 595 F.3d 1086, 1100 (9th Cir. 2010).

With regard to claims that were expressly barred by the state courts:

The doctrine of procedural default provides that a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule. A state procedural rule is adequate if it is regularly or consistently applied by the state courts and it is independent if it does not depend on a federal constitutional ruling. Where a state procedural rule is both adequate and independent, it will bar consideration of the merits of claims on habeas review unless the petitioner demonstrates cause for the default and prejudice resulting therefrom or that a failure to consider the claims will result in a fundamental miscarriage of justice.

McNeill v. Polk, 476 F.3d 206, 211 (4th Cir. 2007) (internal citations and quotations omitted). See also Stewart v. Smith, 536 U.S. 856, 860, 122 S. Ct. 2578, 2582 (2002); Johnson v. Mississippi, 486 U.S. 578, 587, 108 S. Ct. 1981, 1987 (1988).

Because the Arizona Rules of Criminal Procedure regarding timeliness, waiver, and the preclusion of claims bar Petitioner from now returning to the state courts to exhaust any unexhausted federal habeas claims, Petitioner has exhausted and procedurally defaulted any claim not previously fairly presented to the Arizona Supreme Court in his direct appeal or to the

-23-

Arizona Court of Appeals in his state action for post-conviction relief. See Insyxiengmay v. Morgan, 403 F.3d 657, 665 (9th Cir. 2005); Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002). See also Stewart, 536 U.S. at 860, 122 S. Ct. at 2581 (holding Arizona's state rules regarding the waiver and procedural default of claims raised in attacks on criminal convictions are adequate and independent state grounds for affirming a conviction and denying federal habeas relief on the grounds of a procedural bar); Ortiz v. Stewart, 149 F.3d 923, 931-32 (9th Cir. 1998).[6]

However, with regard to claims which may have been procedurally barred by the state courts, "procedural default does not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a reasoned opinion

---

[6] In Arizona, claims not previously presented to the state courts by means of a direct appeal or in a petition for post-conviction relief are generally barred from federal review because an attempt to return to state court to present them is futile, unless the claims fit in a narrow category of claims for which a successive petition is permitted. See Ariz. R. Crim. P. 32.1(d)-(h) & 32.2(a) (precluding claims not raised on appeal or in prior petitions for post-conviction relief, except for narrow exceptions). See also Ariz. R. Crim. P. 32.4 (providing a time-bar to claims for post-conviction relief). Because Rule 32.2(a), Arizona's preclusion rule, has been found both "independent" and "adequate," either its specific application to a claim by an Arizona court, or its operation to preclude a return to state court to exhaust a claim, will procedurally bar review of the merits of that claim by a federal habeas court. See Stewart v. Smith, 536 U.S. 856, 860, 122 S. Ct. 2578, 2582 (2002) (determinations made under Arizona's procedural default rule are "independent" of federal law); Smith v. Stewart, 241 F.3d 1191, 1195 n.2 (9th Cir. 2001) ("We have held that Arizona's procedural default rule is regularly followed ["adequate"] in several cases.") (citations omitted); Ortiz v. Stewart, 149 F.3d 923, 931-32 (rejecting argument that Arizona courts have not "strictly or regularly followed" Rule 32 of Arizona Rules of Criminal Procedure).

-24-

on the case clearly and expressly states that its judgment rests on a state procedural bar." <u>Maupin v. Smith</u>, 785 F.2d 135, 138 (6th Cir. 1986) (internal quotations omitted). <u>See also</u> <u>Harris v. Reed</u>, 489 U.S. 255, 263, 109 S. Ct. 1038, 1043 (1989).

## B. Fundamental miscarriage of justice

Review of the merits of a procedurally defaulted habeas claim is required if the petitioner demonstrates review of the merits of the claim is necessary to prevent a fundamental miscarriage of justice. <u>See</u> <u>Dretke v. Haley</u>, 541 U.S. 386, 393, 124 S. Ct. 1847, 1852 (2004); <u>Schlup v. Delo</u>, 513 U.S. 298, 316, 115 S. Ct. 851, 861 (1995); <u>Murray v. Carrier</u>, 477 U.S. 478, 485-86, 106 S. Ct. 2639, 2649 (1986). A fundamental miscarriage of justice occurs only when a constitutional violation has probably resulted in the conviction of one who is factually innocent. <u>See</u> <u>Murray</u>, 477 U.S. at 485-86, 106 S. Ct. at 2649; <u>Thomas v. Goldsmith</u>, 979 F.2d 746, 749 (9th Cir. 1992) (showing of factual innocence is necessary to trigger manifest injustice relief). To satisfy the "fundamental miscarriage of justice" standard, a petitioner must establish by clear and convincing evidence that no reasonable fact-finder could have found him guilty of the offenses charged. <u>See</u> <u>Dretke</u>, 541 U.S. at 393, 124 S. Ct. at 1852; <u>Wildman v. Johnson</u>, 261 F.3d 832, 842-43 (9th Cir. 2001).

## C. Standard of review regarding exhausted claims

The Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court reached a decision

contrary to clearly established federal law, or the state court decision was an unreasonable application of clearly established federal law. <u>See</u> 28 U.S.C. § 2254(d) (1994 & Supp. 2009); <u>Carey v. Musladin</u>, 549 U.S. 70, 75, 127 S. Ct. 649, 653 (2006); <u>Musladin v. Lamarque</u>, 555 F.3d 834, 838 (9th Cir. 2009). Factual findings of a state court are presumed to be correct and can be reversed by a federal habeas court only when the federal court is presented with clear and convincing evidence. <u>See</u> <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240-41, 125 S. Ct. 2317, 2325 (2005); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003); <u>Maxwell v. Roe</u>, 606 F.3d 561, 567-68 (9th Cir. 2010); <u>Stenson v. Lambert</u>, 504 F.3d 873, 881 (9th Cir. 2007), <u>cert. denied</u>, 129 S. Ct. 247 (2008). The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." <u>Sumner v. Mata</u>, 455 U.S. 591, 593, 102 S. Ct. 1303, 1304-05 (1982). <u>See also</u> <u>Vasquez v. Kirkland</u>, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

A state court decision is contrary to federal law if it applied a rule contradicting the governing law of Supreme Court opinions, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. <u>See</u> <u>Brown v. Payton</u>, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438 (2005); <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 663, 124 S. Ct. 2140, 2149 (2004); <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 1519 (2000). For example, a state court's decision is considered "contrary to

federal law" if the state court erroneously applied the wrong standard of review or an incorrect test to a claim.  See <u>Knowles v. Mirzayance</u>, 129 S. Ct. 1411, 1419 (2009); <u>Wright v. Van Patten</u>, 552 U.S. 120, 124-25, 128 S. Ct. 743, 746-47 (2008). <u>See also</u> <u>Frantz v. Hazey</u>, 533 F.3d 724, 737 (9th Cir. 2008); <u>Bledsoe v. Bruce</u>, 569 F.3d 1223, 1233 (10th Cir. 2009).

The state court's determination of a habeas claim may be set aside under the unreasonable application prong if, under clearly established federal law, the state court was "unreasonable in refusing to extend [a] governing legal principle to a context in which the principle should have controlled." <u>Ramdass v. Angelone</u>, 530 U.S. 156, 166, 120 S. Ct. 2113, 2120 (2000).  <u>See also</u> <u>Vasquez</u>, 572 F.3d at 1035-38; <u>Cook v. Schriro</u>, 538 F.3d 1000, 1015 (9th Cir. 2008), <u>cert. denied</u>, 129 S. Ct. 1033 (2009).  However, the state court's decision is an unreasonable application of clearly established federal law only if it can be considered objectively unreasonable. <u>Carey</u>, 549 U.S. at 74-75, 127 S. Ct. at 653; <u>Williams</u>, 529 U.S. at 409, 120 S. Ct. at 1521.  An unreasonable application of law is different from an incorrect one.  <u>See</u> <u>Bell v. Cone</u>, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850 (2002); <u>Cooks v. Newland</u>, 395 F.3d 1077, 1080 (9th Cir. 2005).

Furthermore, only United States Supreme Court holdings, and not dicta or concurring opinions, at the time of the state court's decision are the source of "clearly established federal law" for the purpose of the "unreasonable application" prong of federal habeas review. <u>Williams</u>, 529 U.S. at 412, 120 S. Ct. at

1523; <u>Carey</u>, 549 U.S. at 74, 127 S. Ct. at 653; <u>Ponce v. Felker</u>, 606 F.3d 596, 599 (9th Cir. 2010); <u>Plumlee v. Masto</u>, 512 F.3d 1204, 1209-10 (9th Cir. 2008), <u>cert. denied</u>, 125 S. Ct. 2885 (2009).

If the Supreme Court has not addressed a specific issue in its holdings, the state court's adjudication of the issue cannot be an unreasonable application of clearly established federal law. <u>See</u> <u>Stenson</u>, 504 F.3d at 881, <u>citing</u> <u>Kane v. Garcia Espitia</u>, 546 U.S. 9, 10, 126 S. Ct. 407, 408 (2006).[7] Stated another way, if the issue raised by the petitioner "is an open question in the Supreme Court's jurisprudence," the Court may not issue a writ of habeas corpus on the basis that the state court unreasonably applied clearly established federal law by rejecting the precise claim presented by the petitioner. <u>Cook</u>, 538 F.3d at 1016; <u>Crater v. Galaza</u>, 491 F.3d 1119, 1123 (9th Cir. 2007), <u>cert. denied</u>, 128 S. Ct. 2961 (2008). The United States Supreme Court "has held on numerous occasions that it is not an unreasonable application of clearly established

---

[7]
> The federal appellate courts have split on whether Faretta, which establishes a Sixth Amendment right to self-representation, implies a right of the pro se defendant to have access to a law library.[]. That question cannot be resolved here, however, as it is clear that Faretta says nothing about any specific legal aid that the State owes a pro se criminal defendant. The ... court below therefore erred in holding, based on Faretta, that a violation of a law library access right is a basis for federal habeas relief.

<u>Kane v. Garcia Espitia</u>, 546 U.S. 9, 10-11, 126 S. Ct. 407, 408-09 (2005).

Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles, 129 S. Ct. at 1419, citing Wright, 552 U.S. at 124-25, 128 S. Ct. at 746-47.[8] See also Vasquez, 572 F.3d at 1038.

The holdings of the Circuit Courts of Appeal are relevant to resolution of a petitioner's habeas claims only to the extent they are useful in deciding whether the law has been clearly established or that the state court decision is an "unreasonable application" of United States Supreme Court precedent, and not with regard to what constitutes a violation of constitutional rights. See Maxwell, 606 F.3d at 567; Bible v. Ryan, 571 F.3d 860, 870 (9th Cir. 2009); Ortiz-Sandoval v. Clarke, 323 F.3d 1165, 1172 (9th Cir. 2003) ("Because [the] AEDPA limits habeas relief to state decisions that offend 'clearly established' federal law as set by the Supreme Court, a state court decision may not be overturned simply because of a conflict with circuit law."). Compare Smith v. Dinwiddie, 510 F.3d 1180, 1186 (10th Cir. 2007).

---

[8]
Our cases provide no categorical answer to this question, and for that matter the several proceedings in this case hardly point toward one. The Wisconsin Court of Appeals held counsel's performance by speaker phone to be constitutionally effective; neither the Magistrate Judge, the District Court, nor the Seventh Circuit disputed this conclusion; and the Seventh Circuit itself stated that "[u]nder Strickland, it seems clear Van Patten would have no viable claim." Deppisch, 434 F.3d, at 1042. Wright v. Van Patten, 552 U.S. 120, 128 S. Ct. 743, 746-47 (2008).

Accordingly, a state court decision may be contrary to a Ninth Circuit Court of Appeals' holding without being an unreasonable application of United States Supreme Court precedent. See Kessee v. Mendoza Powers, 574 F.3d 675, 679 (9th Cir. 2009). The Ninth Circuit recently held that when a Supreme Court decision does not "squarely address" the issue presented by the habeas petitioner, or if the Supreme Court principle does not "clearly extend" to the context of the situation presented by the petitioner, "it cannot be said, under AEDPA, there is 'clearly established' Supreme Court precedent addressing the issue." Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009).[9]

The Court must review the last reasoned state court opinion on the claims raised in the habeas action. See, e.g., Vasquez, 572 F.3d at 1035. When there is no "reasoned" state court decision explaining the state's denial of a claim presented in a federal habeas petition, the District Court must perform an independent review of the record to ascertain whether the state court's decision summarily denying the claim was objectively reasonable. See Medley v. Runnels, 506 F.3d 857, 863 & n.3 (9th Cir. 2007), cert. denied, 128 S. Ct. 1878 (2008);

_____

[9]
If the Court's decisions do provide a "controlling legal standard," Panetti, 127 S. Ct. at 2858, that is applicable to the claims raised by a habeas petitioner without "tailoring or modification" of the standard, the question is then whether the application of that standard was objectively unreasonable, even if the facts of the case at issue are not identical to the Supreme Court precedent.
Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009).

-30-

Stenson, 504 F.3d at 890; Pham v. Terhune, 400 F.3d 740, 742 (9th Cir. 2005). If the Court determines that the state court's decision was an objectively unreasonable application of clearly established United States Supreme Court precedent, the Court must review whether Petitioner's constitutional rights were violated, i.e., the state's ultimate denial of relief, without the deference to the state court's decision that the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") otherwise requires. See Panetti v. Quarterman, 551 U.S. 930, 953-54, 127 S. Ct. 2842, 2858-59 (2007); Butler v. Curry, 528 F.3d 624, 641 (9th Cir. 2008). See also Jones v. Ryan, 583 F.3d 626, 640 (9th Cir. 2009).

### D. Petitioner's claims for relief

**1. Petitioner asserts the state violated his right to due process of law by withholding exculpatory evidence regarding his blood alcohol level during the offenses.**

Petitioner argues his constitutional rights were violated by the state's failure to disclose evidence regarding his blood alcohol level during the offenses. Petitioner contends the prosecutor did not disclose that a police detective had determined that Petitioner's blood alcohol content would have been below the legal limit for driving while intoxicated after the consumption of two Fosters beers three and one half hours prior to the crime. Petitioner contends the failure to disclose this evidence prior to trial violated his rights pursuant to Brady v. Maryland. Regardless of any failure to fully or properly exhaust this claim, it may be denied on the merits.

In <u>Brady v. Maryland</u> the United States Supreme Court held that a defendant's right to due process of law is violated when the government fails to disclose evidence that is material to the defendant's guilt or innocence, including impeachment evidence. <u>See</u> 373 U.S. 83, 86-87, 83 S. Ct. 1194, 1196-97 (1963); <u>Schad v. Ryan</u>, 595 F.3d 907, 915 (9th Cir. 2010). The state violates this obligation and denies a criminal defendant due process of law if "(1) the evidence in question was favorable to the defendant, meaning that it had either exculpatory or impeachment value; (2) the state 'willfully or inadvertently' suppressed the evidence; and (3) the defendant was prejudiced by the suppression." <u>Schad</u>, 595 F.3d at 915, <u>quoting</u> <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 1948 (1999). <u>See also</u> <u>Horton v. Mayle</u>, 408 F.3d 570, 578 (9th Cir. 2005) (holding the government's failure to disclose a leniency deal with a witness was reversible error).

Petitioner's state of intoxication, or not, at the time of the crimes, and whether Petitioner had a preexisting alcohol consumption issue, were disputed during testimony. The inferences that Petitioner was intoxicated at the time of the crimes was countered by testimony that signs of intoxication could have resulted from allergies or extreme mental agitation. Petitioner's counsel elicited testimony from the employees of the restaurant and sports bar who had contact with Petitioner on the day of the crimes that they regularly called taxis for people who were obviously intoxicated and that they did not

think it necessary to call a taxi for Petitioner.[10]

Any undisclosed evidence regarding Petitioner's blood alcohol level at the time of the crimes could not have been exculpatory because evidence that Petitioner's blood alcohol level was below the legal limit for driving while intoxicated would not necessarily prove or disprove Petitioner's affirmative defense of insanity. No prejudice resulted from the alleged "failure" to disclose this evidence because in Arizona a defendant's voluntary intoxication is not a defense to a charge of murder, assault with a deadly weapon, or drive-by shooting. Arizona v. Kiles, 222 Ariz. 25, 33 & n.10, 213 P.3d 174, 182 & n.10[11] (2009) ("The statute unambiguously provides that intoxication is a defense only against the culpable mental state of intentionally."); Arizona v. Lavers, 168 Ariz. 376, 389, 814 P.2d 333, 346 (1991) (concluding that voluntary intoxication is not defense to knowing first degree murder). Accordingly, this claim for federal habeas relief may be denied on the merits of the claim.

---

[10] *Inter alia*, Petitioner's brother testified he believed Petitioner had a problem with alcohol prior to the events of September 11, 2001. See Answer, Exh. C. Petitioner's brother testified that Petitioner was so incoherent when he spoke with him by telephone on September 15, 2001, that the brother initially surmised Petitioner was intoxicated. Id., Exh. C. The record indicated that Petitioner had purchased two beers and consumed at least one of them at the Wild Hare bar at approximately 11:30 on the morning of September 15, 2001. See, e.g., Answer, Exh. E.

[11] "The legislature amended the statute in 1994 to eliminate intoxication as a defense 'for any criminal act or requisite state of mind.' A.R.S. § 13-503 (2001); 1993 Ariz. Sess. Laws, ch. 256, §§ 2, 3 (1st Reg. Sess.)."

-33-

**2. Petitioner contends his right to due process of law and his right to a fair trial were violated when the state failed to fully disclose the content of an expert witness' rebuttal testimony and when that expert witness made inconsistent statements.**

Petitioner raised this *federal habeas* claim in his direct appeal. The en banc Arizona Supreme Court denied relief on this claim:

> At trial, the defense called Drs. Rosengard and Barry to testify regarding Roque's mental condition at the time of the crimes. Before the defense rested, the State called Dr. Ben-Porath out of order in rebuttal. The State had disclosed to the defense only that Dr. Ben-Porath would testify regarding the validity of the administrations of the MMPI-2. However, on the stand, Dr. Ben-Porath began to interpret the results of Roque's MMPI-2 tests. The defense immediately objected that the doctor's testimony fell outside the scope of disclosure, pointing out that the State had neither disclosed any written report from Dr. Ben-Porath nor outlined his opinion. Citing Arizona Rule of Criminal Procedure 15.1(a)(3), the defense asserted that the State was obligated to disclose "an overview" of the expert's testimony, including an "outline" of his opinion or a "written report."
>
> The judge concluded that the State would have had to disclose any written report generated by Dr. Ben-Porath, but did not have to create an overview of his testimony. The judge therefore found no disclosure violation, but nonetheless proposed giving the defense the remainder of the afternoon, commencing at approximately 3:15 p.m., to interview Dr. Ben-Porath. The defense attorney declined, saying that he could not effectively challenge Dr. Ben-Porath's expanded testimony on such short notice. The judge ruled that Dr. Ben-Porath could continue to testify, and the doctor proceeded to analyze Roque's MMPI-2 results in detail.
>
> Dr. Ben-Porath then began to analyze the results of the M-FAST that Dr. Barry had administered to Roque. The defense again objected, this time because Dr. Ben-Porath was testifying regarding a diagnostic tool

other than the MMPI-2. The judge overruled the objection. Dr. Ben-Porath proceeded to opine on the critical questions of whether the MMPI-2 results indicated that Roque had mental disorders and whether the M-FAST results indicated malingering.

The prosecutors conceded below that they had not revealed to the defense that Dr. Ben-Porath would testify to anything other than the proper administration of the MMPI-2. Recognizing that their failure to disclose the scope of Dr. Ben-Porath's testimony might create an appellate issue, the lead prosecutor said, "I don't suppose an appellate court cares whether I'm sorry about something but I think we had ... a miscommunication." The prosecutor then said he would not object if the defense had to hire another expert to rebut Dr. Ben-Porath's testimony because of the "miscommunication."

213 Ariz. 193, 206, 141 P.3d 368, 381. The state court continued: "We therefore conclude, under these facts, that the trial court erred in ruling that Rule 15.1(a)(3) requires that only a 'written report or statement' need be disclosed." *Id.*, 213 Ariz. at 209, 141 P.3d at 384.

The Arizona Supreme Court further found:

Dr. Ben-Porath's testimony far exceeded a discussion of the validity of an oral administration of the MMPI-2 followed three months later by a paper administration of the test. Dr. Ben-Porath analyzed several of Roque's scores from both test administrations, such as those indicating bizarre mentation. *Indeed, Dr. Ben-Porath testified to the ultimate question in dispute, opining that Roque's MMPI-2 scores did not indicate that Roque had any of several mental conditions about which the prosecutor questioned him. On this critical issue, Dr. Ben-Porath was the only expert to find no evidence of mental illness.* Dr. Ben-Porath also testified that Roque's M-FAST score indicated malingering, and he offered a general psychological opinion in response to a juror's question.

-35-

Id., 213 Ariz. at 209, 141 P.3d at 384 (emphasis added).

Accordingly, the court held: "The State's failure to fully and fairly disclose to the defense the results of Dr. Ben-Porath's assessment of Roque's mental health, the critical issue in this capital case, violated Rule 15.1(a)(3)." Id., 213 Ariz. at 210, 141 P.3d at 385. Citing state law, the Arizona Supreme Court found the state trial court had fashioned an appropriate sanction for the prosecution's improper conduct, notwithstanding defense counsel's refusal to accept the trial court's proffered sanction. Therefore, the Arizona Supreme Court held, the failure to preclude the testimony was not reversible error. Id., 213 Ariz. at 211, 141 P.3d at 386, citing Arizona v. Tucker, 157 Ariz. 433, 441, 759 P.2d 579, 587 (1988) (observing that, without reversal, counsel may consider admonition only a "verbal spanking").

A federal court is limited in conducting habeas review to deciding whether a conviction violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991). A state court's evidentiary ruling does not provide a basis for habeas relief unless the ruling infringed upon a specific federal constitutional right or deprived the petitioner of a fundamentally fair trial as guaranteed by the right to due process of law. See Pulley v. Harris, 465 U.S. 37, 41-42, 104 S. Ct. 871, 874-75 (1984); Briceno v. Scribner, 555 F.3d 1069, 1076-77 (9th Cir. 2009). The violation of a state rule of criminal procedure does not, by itself, constitute a violation

of a defendant's federal constitutional rights, including their right to procedural due process.

To be entitled to habeas relief on this type of claim, the petitioner must establish that the admission of the evidence was so arbitrary or prejudicial that it rendered their trial fundamentally unfair. See Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995) (stating this in the context of a claim that the improper admission of the fact of a prior conviction violated the petitioner's federal constitutional right to due process of law). "In essence, the inquiry comes down to the question, whether absent the constitutionally-forbidden evidence, honest and fair-minded jurors might very well have brought in not-guilty verdicts." Burns v. Clusen, 798 F.2d 931, 943 (7th Cir. 1986). Typically, the federal courts require other evidence of guilt to be overwhelming before concluding a constitutional error was harmless. See Mauricio v. Duckworth, 840 F.2d 454, 459 (7th Cir. 1988).

The state court's conclusion that any violation of Petitioner's rights in admitting the testimony of Dr. Ben Porath was harmless is not clearly contrary to federal law as established by the United States Supreme Court.

> With regard to expert testimony, we recently noted that we have found no cases "support[ing] the general proposition that the Constitution is violated by the admission of expert testimony concerning an ultimate issue to be resolved by the trier of fact." Moses v. Payne, 543 F.3d 1090, 1105 (9th Cir. 2008). "Although '[a] witness is not permitted to give a direct opinion about the defendant's guilt or innocence .... an expert may otherwise testify regarding even an ultimate

-37-

issue to be resolved by the trier of fact.'" <u>Id.</u> at 1106 (quoting <u>United States v. Lockett</u>, 919 F.2d 585, 590 (9th Cir. 1990) (alteration in original)). We found this "not surprising," <u>id.</u>, in light of the well-established rule permitting opinion testimony on ultimate issues, <u>see</u> <u>Hangarter v. Provident Life & Accident Ins. Co.</u>, 373 F.3d 998, 1016 (9th Cir. 2004).

<u>Briceno</u>, 555 F.3d at 1077-78.

Because the state court's decision regarding this claim was not clearly contrary to nor an unreasonable application of federal law, Petitioner is not entitled to habeas relief on the merits of this claim.

**3. Petitioner alleges he was denied a fair trial as a result of juror misconduct.**

Petitioner raised this claim in his direct appeal. The Arizona Supreme Court concluded Petitioner was not entitled to relief on this claim.

Roque claims that the trial judge abused his discretion in not replacing a juror with an alternate after a movie producer handed the juror a business card. We review for abuse of discretion, [], deferring to the trial judge's superior opportunity to assess the juror's demeanor and credibility, []

"In a criminal case, any private communication, contact or tampering[,] directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial." <u>State v. Miller</u>, 178 Ariz. 555, 558-59, 875 P.2d 788, 791-92 (1994) (quoting <u>Remmer v. United States</u>, 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954)). But the "presumption is rebuttable, and the burden rests with the government to show that the third party communication did not taint the verdict." <u>Id.</u> at 559, 875 P.2d at 792.

In this case, while the movie producer's contact with the juror was presumptively prejudicial, the judge properly heard testimony from the producer and the juror to

> determine whether the juror could still render a fair and impartial decision. The hearing revealed that, when the producer handed the business card to the juror, the juror simply put it in his pocket. He said nothing to the producer and was unsure of the producer's profession. The juror stated unequivocally that the producer's contact would not affect his ability to fairly and impartially decide the case. The judge concluded that the State had met its burden of overcoming the presumption of prejudice. On this record, we cannot conclude that the judge abused his discretion in allowing the juror to remain on the panel.

213 Ariz. at 209, 141 P.3d at 384.[12]

The state court's decision was not clearly contrary to nor an incorrect application of established federal law. To be entitled to relief on this claim, Petitioner must rebut the state courts' presumptively correct finding that the challenged juror could serve fairly and impartially. See <u>Greene v. Georgia</u>, 519 U.S. 145, 146, 117 S. Ct. 578, 579 (1996) (holding the federal habeas courts must accord a presumption of correctness to state court's findings of juror bias).

In a criminal case any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter is presumptively prejudicial. See <u>Caliendo v.</u>

---

[12] Petitioner contends the juror lied to the state trial judge by saying first that they did not know the profession of the person who had proffered the business card and then by saying they thought the individual was part of a news crew covering the trial. After the trial court's questioning of Juror 13, Petitioner's defense counsel moved to have the juror replaced or for the declaration of a mistrial. However, immediately thereafter the jury reported reaching a verdict. The bailiff indicated to the trial court that the jury had reached a verdict before the trial court's questioning of Juror 13 regarding their interaction with the film maker. <u>See</u> Answer, Exh. JJ.

-39-

<u>Warden of Calif. Men's Colony</u>, 365 F.3d 691, 694-96 (9th Cir. 2004). However, the presumption is rebuttable if the state establishes that the communication did not taint the verdict. <u>Id.</u>, 365 F.3d at 696.

In Petitioner's case, the trial judge heard testimony from the producer and the juror to determine whether the juror could still render a fair and impartial decision. The juror stated unequivocally that the producer's contact would not affect his ability to fairly and impartially decide the case. The judge concluded that the state had met its burden of overcoming the presumption of prejudice. Because the contact revealed by the record indicates that the impartiality of the jury's verdict was not affected by the contact, the trial court's denial of Petitioner's claim was neither contrary to nor an unreasonable application of federal law. See <u>Fields v. Brown</u>, 503 F.3d 755, 779-80 (9th Cir. 2007); <u>Sims v. Brown</u>, 425 F.3d 560, 577 (9th Cir. 2005). Therefore, Petitioner is not entitled to relief on this habeas claim.

**4. Petitioner contends he was incompetent to stand trial because he was on anti-psychotic medication at the time of trial.**

Petitioner asserts his right to due process of law was violated because he was not mentally competent to stand trial. Petitioner raised this issue in his state Rule 32 action, which was summarily denied. The state court's decision did not expressly proclaim that Petitioner's claims were denied based on the procedural basis of claim preclusion. Nonetheless, the claim may be denied on the merits notwithstanding any failure to

-40-

properly exhaust the claim.

Prior to trial, Petitioner's counsel filed a motion requesting an evaluation to determine Petitioner's mental competency. Answer, Exh. KK. All parties, including Petitioner, subsequently stipulated that the trial court could determine Petitioner's competency to stand trial based upon the reports of Dr. Jack Potts and Dr. Michael Colfield. Id., Exh. LL. Both experts found Petitioner competent to stand trial. Id., Exh. MM. After reviewing their reports, the state trial court concluded that Petitioner understood the proceedings and was able to assist counsel with his defense. Id., Exh. MM.

To be entitled to habeas relief on a claim that they were mentally incompetent to stand trial notwithstanding a pretrial hearing to determine their competence, a petitioner must present clear and convincing evidence that he was incompetent at the time of his trial. See Thompson v. Keohane, 516 U.S. 99, 111, 116 S. Ct. 457, 464-65 (1995); Miller-El v. Johnson, 261 F.3d 445, 454 (5th Cir. 2001); Mackey v. Dutton, 217 F.3d 399, 412-14 (6th Cir. 2000). The issue is not whether the petitioner suffered from a mental illness per se, but whether the petitioner had the ability to consult with his lawyer with a reasonable degree of rational understanding and whether he had a rational as well as factual understanding of the proceedings against him. Edmonds v. Peters, 93 F.3d 1307, 1314 (7th Cir. 1996), quoting Dusky v. United States, 362 U.S. 402, 402, 80 S. Ct. 788, 789 (1960); Burket v. Angelone, 208 F.3d 172, 192 (4th Cir. 2000). See also Medina v. California, 505 U.S. 437, 439 & 448, 112 S.

-41-

Ct. 2572, 2574 & 2579 (1992). Criminal defendants who have been diagnosed as psychotic or who were taking anti-psychotic medications before pleading guilty or during trial are not per se incompetent to stand trial or enter a plea. See Beck v. Angelone, 261 F.3d 377, 388 (4th Cir. 2001); Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir. 1995); Medina v. Singletary, 59 F.3d 1095, 1107 (11th Cir. 1995); Balfour v. Hawes, 892 F.2d 556, 561-63 (7th Cir. 1989). A mentally-ill petitioner claiming incompetence must also point to some irrational conduct calling into question their ability to assist defense counsel and understand the proceedings against him at the time of his trial. See, e.g., Contreras v. Rice, 5 F. Supp. 2d 854, 864-65 (C.D. Cal. 1998).

The trial transcript in this matter and Petitioner's pleadings having been thoroughly reviewed, the Magistrate Judge concludes that there is no evidence before the Court of irrational conduct by Petitioner at the time of his trial that would call into question his ability to assist counsel or understand the proceedings. Accordingly, the state court's decision denying this claim in Petitioner's Rule 32 action, to the extent it was not based on the preclusion of the claim, was not clearly contrary to federal law nor an unreasonable application of federal law to Petitioner's case. Therefore, Petitioner is not entitled to federal habeas relief on this claim.

1      **5. Petitioner maintains his Sixth Amendment right to confrontation was violated by the introduction of statements made by his wife to a police investigator.**

2  

3      In his amended habeas petition Petitioner asserts that a videotape of his wife being interviewed by police was introduced as evidence at Petitioner's trial. Petitioner argues that, because his wife did not testify at trial and because she made statements on the videotape regarding Petitioner's mental health, the introduction of the tape violated his Sixth Amendment Confrontation Clause rights, i.e., his right to confront witnesses against him. Petitioner also alleges that his rights were violated by the introduction at trial of testimony by a police detective as to statements made to the detective by Petitioner's wife.

     Petitioner's wife could not be located by the prosecution and, accordingly, was not subpoenaed to testify at Petitioner's trial. The primary issue at trial was Petitioner's sanity at the time the crimes were committed. Conflicting testimony was presented regarding whether or not Petitioner exhibited signs of mental illness, such as hallucinations, prior to the date of the crimes and on the date of the crimes. The trial court admitted a videotape of police detectives telling Petitioner about statements made by his wife in the course of their investigation of the crimes committed on September 15, 2001, at which time Petitioner was a suspect in those crimes. The admission of out-of-court statements by Petitioner's wife, who was not available to testify, to a police detective investigating the crimes regarding Petitioner's mental condition,

-43-

would arguably violate the holding in <u>Crawford</u>.

Respondents assert Petitioner is factually mistaken in claiming that the jury viewed a videotape of the police interviewing his wife. The record indicates that, during Petitioner's trial, portions of a videotape of two police investigators interviewing Petitioner were played for the jury. Defense counsel objected to the introduction of this evidence. The videotape was recorded shortly after Petitioner was taken into custody. In the videotape the investigators tell Petitioner that his wife has told them certain facts about Petitioner.

Additionally, the jury was shown a portion of a videotape in which Petitioner and his wife are talking at the police station after Petitioner was interviewed by the investigators. Petitioner's counsel objected to the introduction of the videotape, asserting it was hearsay and also arguing that it violated marital privilege. The trial judge overruled defense counsel's objection to the admission of the videotape, concluding that the statements in the tape were not being offered for the truth of the asserted facts.

The videotape of Petitioner speaking with his wife was introduced during Dr. Scialli's testimony, and was offered as the best evidence regarding Petitioner's mental state at a time close to the time of the crimes, as compared to the examinations of mental health experts weeks, months, or years after the crimes. Dr. Scialli had reviewed the tapes and believed it supported his conclusion that Petitioner was not unable to understand his circumstance or what had occurred at the time of the crimes.

The trial judge instructed the jury that the videotapes were offered only to establish the context of Petitioner's statements as relied upon by Dr. Scialli when he rendered his expert opinion regarding Petitioner's mental state and that the jury was not to accept the truth of what the detectives said on the videotape or the truth of what Petitioner's wife had said on the videotape. See Answer, Exh. H at 58.

Petitioner raised the first portion of his fifth federal habeas claim in his direct appeal, asserting that the trial court improperly admitted as evidence a videotape of Petitioner's wife being interviewed by police. Petitioner argued that the police interviewers testified at his trial as to his wife's statements about Petitioner's mental state at the time of the crimes.

In denying this claims, the Arizona Supreme Court concluded:

> During the videotaped interrogation of Roque after the shootings, the police detectives told Roque that his wife, Dawn, had made statements to them incriminating Roque. Dawn refused to testify at trial. Roque asserts that the admission of the videos at trial violated the Sixth Amendment's Confrontation Clause as interpreted in Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, [] (2004), because the detectives used Dawn's statements in questioning Roque and Roque had no opportunity to cross-examine Dawn.
> The trial court's admission of the videos did not violate the Confrontation Clause. Crawford establishes that the Sixth Amendment right to confront witnesses attaches to testimonial witness statements made to a government officer to establish some fact. See 541 U.S. at 68, 124 S. Ct. 1354. In this case, however, there was no evidence presented that Dawn actually made the statements that the detectives used in questioning Roque. *The detectives' report of what Dawn said was not*

-45-

*being offered at trial for the truth of the matters allegedly asserted by Dawn and therefore did not constitute hearsay.* Instead, the detectives were using an interrogation technique to elicit a confession from Roque. The judge instructed the jury, in watching the interrogation videos, not to consider the detectives' statements for their truth. Because the statements allegedly made by Dawn were never introduced for their truth, they were not testimonial hearsay statements barred by the Confrontation Clause. <u>See</u> <u>id.</u> at 59 n.9, 124 S. Ct. 1354. The admission of the videotaped statements therefore did not violate Roque's rights under the Confrontation Clause.

213 Ariz. at 213-14, 141 P.3d at 388-89 (emphasis added).

In addition to the videotape, the prosecution introduced testimony relating to a police interview between Petitioner's wife and police detective Donald Vogel. Petitioner's defense counsel objected to this testimony, arguing that it was hearsay. <u>See</u> Answer, Exh. NN at 81. The prosecutor responded that it was not hearsay because it was not being offered for the truth of the matter asserted, but rather to impeach previous testimony regarding claims that Petitioner had heard voices prior to the offense. <u>Id.</u>, Exh. NN at 82. The trial court overruled the objection, and instructed the jury that the testimony was not being offered to prove or disprove the matter asserted or the truth of any matter not asserted by a person who was speaking outside of the courtroom, i.e., Petitioner's wife. <u>Id.</u>, Exh. NN at 82. On cross-examination, Detective Vogel admitted that he did not ask Petitioner's wife specific questions about Petitioner's mental health, and that he did not ask her whether Petitioner had heard voices the week prior to the offense. <u>Id.</u>,

Exh. NN at 92.

In _Crawford v. Washington_, 541 U.S. 36, 124 S. Ct. 1354 (2004), the United States Supreme Court held that the Sixth Amendment right to confront witnesses attaches to testimonial witness statements made to a government officer to establish some fact. However, non-testimonial statements do not implicate the Sixth Amendment's core concerns. _Id._, 541 U.S. at 51, 124 S. Ct. at 1364. _See also_ _United States v. Earl_, 488 F.3d 537, 543 (1st Cir. 2007) (describing categories of statements which have been held to be testimonial).

Detective Vogel's testimony was not offered for the truth of the matter asserted, i.e., that Petitioner had told his wife he heard voices or that he did not, but rather to impeach prior testimony regarding the assertion that Petitioner had heard voices prior to the date of the crimes. Because this testimony was not introduced for the truth of the matter asserted but instead was impeaching, it did not involve testimonial hearsay statements barred by the Confrontation Clause. _See_ _Crawford_, 541 U.S. at 59, 124 S. Ct. at 1369. Because the state court's decision in this regard was not clearly contrary to federal law, i.e., the United States Supreme Court's decision in _Crawford_, Petitioner is not entitled to relief on this claim.

In _Crawford_, issued in 2004 while Petitioner's case was on appeal, the United States Supreme Court held that the admission at trial of a wife's out-of-court statements to police officers investigating her husband's complicity in felony crimes violated the husband's Confrontation Clause rights. Accordingly,

-47-

to the extent Petitioner asserted in his direct appeal that or his post-convictions proceedings that the trial court improperly admitted evidence of his wife's statements to police officers, a state court decision denying this claim on the merits of the claims would be contrary to established federal law.

Assuming that such a claim was properly exhausted and wrongly decided by the state courts, however, Petitioner is still not entitled to federal habeas relief on this claim.

> Under AEDPA, even where the state court has committed constitutional error under § 2254(d), habeas relief may still be denied absent a showing of prejudice. ... To determine prejudice, we apply the harmless-error standard from <u>Brecht</u>. Under this standard, we grant relief where we believe the error "had substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht</u>, 507 U.S. at 623, 113 S.Ct. 1710 (<u>quoting Kotteakos v. United States</u>, 328 U.S. 750, 776, 66 S.Ct. 1239[] (1946) (internal quotation marks omitted)). As the Supreme Court has explained, under the <u>Brecht</u> standard, we ask, "Do I, the judge, think that the error substantially influenced the jury's decision." <u>O'Neal v. McAninch</u>, 513 U.S. 432, 436, 115 S.Ct. 992, [] (1995). In a case where the record is so evenly balanced that a "conscientious judge is in grave doubt as to the harmlessness of an error," the petitioner must prevail. <u>Id.</u> at 438, 115 S. Ct. 992. Thus, in the course of a Brecht inquiry, the state bears the "risk of doubt." <u>See</u> <u>Valerio v. Crawford</u>, 306 F.3d 742, 762 (9th Cir. 2002) (en banc).

<u>Gautt v. Lewis</u>, 489 F.3d 993, 1016 (9th Cir. 2007) (some internal citations and quotations omitted).

To be entitled to federal habeas relief, the Court must independently conclude that Petitioner's constitutional rights were violated and that the violation was not harmless error.

-48-

Confrontation Clause violations are subject to harmless error analysis. <u>See</u>, <u>e.g.</u>, <u>Lilly v. Virginia</u>, 527 U.S. 116, 140, 119 S. Ct. 1887, 1901-02 (1999); <u>Winzer v. Hall</u>, 494 F.3d 1192, 1201 (9th Cir. 2007) ("Violation of the Confrontation Clause is trial error subject to harmless-error analysis ... because its effect can be 'quantitatively assessed in the context of other evidence presented' to the jury." (citation omitted)).

The entire record submitted by the parties in this matter having been thoroughly reviewed, the Magistrate Judge concludes that any error in admitting the videotape of the interview of Petitioner's wife by the police detective at Petitioner's trial was harmless error. In light of all of the evidence presented at Petitioner's trial, including the testimony of psychiatric experts, police detectives, Petitioner's daughter and brother, and the people who observed Petitioner on the date of the crimes, the admission of any testimonial statements by Petitioner's wife could not have influenced the jury's decision. Accordingly, habeas relief may be denied on this claim.

**6. Petitioner was denied the ability to assist and confer with defense counsel because he was required to wear a stun belt during trial. Petitioner contends wearing the belt inhibited his ability to confer with his defense attorney.**

Petitioner contends that the shock belt hampered his ability to assist his defense counsel because he was afraid any quick movement would result in a shock and because prongs in the shock belt kept him in constant pain and he could not lean back. Petitioner alleges the trial judge found the use of the device was at the sole discretion of the detention officers and that the

-49-

trial judge did not make a record regarding any necessity for the belt. Petitioner raised this claim in his state action for post-conviction relief, in which relief was summarily denied by the state courts.

All of the federal cases which discuss habeas relief based on a shackling claim state that, to succeed on this type of claim, the petitioner must show that the physical restraints 'had substantial and injurious effect or influence in determining the jury's verdict..." <u>Rhoden v. Rowland</u>, 172 F.3d 633, 636 (9th Cir. 1999). <u>See</u> <u>also</u> <u>Holbrook v. Flynn</u>, 475 U.S. 560, 568-69, 106 S. Ct. 1340, 1345 (1986). To be entitled to habeas relief on this claim the District Court must conclude that the jury saw or was aware of the restraint and that the restraint was not justified by state interests. <u>See</u> <u>Ghent v. Woodford</u>, 279 F.3d 1121, 1132 (9th Cir. 2002). Additionally, for <u>unjustified</u> restraint to rise to the level of a constitutional trial error, Petitioner must establish that he suffered prejudice as a result of the restraint. <u>See</u> <u>id.</u>; <u>Williams v. Woodford</u>, 384 F.3d 567, 592-93 (9th Cir. 2004); <u>Gonzalez v. Pliler</u>, 341 F.3d 897, 903 (9th Cir. 2003). <u>See</u> <u>also</u> <u>Dyas v. Poole</u>, 317 F.3d 934, 936-37 (9th Cir. 2003).

Petitioner has not established that the jury saw the stun belt. <u>See</u> <u>Williams</u>, 384 F.3d at 592-93; <u>Packer v. Hill</u>, 291 F.3d 569, 583 (9th Cir. 2002) (concluding no prejudice resulted from the defendant's leg brace when no juror interviewed after trial remembered seeing a leg brace on the defendant); <u>Rich v. Calderon</u>, 187 F.3d 1064, 1069 (9th Cir. 1999). Petitioner's

1   defense counsel has conceded that the jury was never aware of any

2   such device.  <u>See</u> Answer, Exh. OO. Moreover, although Petitioner

3   claims that the stun belt inhibited his ability to participate

4   in his defense, unlike the defendant in <u>Gonzalez</u>, there is

5   nothing in the record to support this assertion.  The record is

6   devoid of any complaints, comments, or objections on the part of

7   Petitioner regarding the device.[13]

8   **7. Petitioner contends his right to due process of law
    was violated by the introduction of autopsy photographs as**
9   **evidence.**

10  During Petitioner's trial the state moved to admit

11  autopsy photographs of Mr. Sodhi.  Answer, Exh. B at 74-78.  The

12  prosecutor argued that the photographs demonstrated the entrance

13  _____

14  [13] In an unpublished opinion which is, therefore, not
    precedential but is indicative of the reasoning of the Ninth Circuit
    Court of Appeals, that court stated:

15          Despite this violation of his constitutional
            rights, we cannot grant habeas relief. In the
16          habeas context, [harmless error analysis] means
            that the petitioner must show that the physical
17          restraints had substantial and injurious effect
            or influence in determining the jury's verdict.
18          <u>Gonzalez</u>, 341 F.3d at 903 (internal quotation
            marks and citations omitted). There is no
19          evidence that the belt was visible to the jury.
            Berg's speculative claims that the jury's
20          perception of him was distorted by the React belt
            and the fear and anxiety that it provoked in both
21          him and his trial counsel do not show substantial
            and injurious effect or influence where the jury
22          was also presented with significant and strong
            evidence of Berg's guilt. In the light of this
23          evidence, it is unlikely that the React belt and
            its effects on Berg's comportment and demeanor
24          had a substantial influence on the jury's
            determination of his guilt. Further, the evidence
25          tendered in this case was insufficient to
            establish that Berg could not communicate with
26          his counsel because of the use of the React belt.
    <u>Berg v. Runnels</u>, 198 Fed. App. 672, 673 (2006).

27

28                              -51-

wounds of the bullets and were thus relevant to establish premeditation, i.e., that Petitioner intended to kill the victim. Id., Exh. B at 77.

Generally, the admissibility of evidence is a matter of state law which is not cognizable in a federal habeas proceeding. See, e.g., Estelle, 502 U.S. at 67-68, 112 S. Ct. at 479-80; Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985). Standing alone, the failure to comply with state rules of evidence is not a sufficient basis for granting federal habeas relief, i.e., such a failure is not equivalent to a deprivation of the federal constitutional right to due process of law. See, e.g., Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991). A due process violation occurs only if there was no permissible inferences that the jury could draw from the evidence. Id., 926 F.3d at 920.

To rise to the level of a constitutional violation, the introduced evidence must be of such quality as necessarily prevents a fair trial. Id., quoting Kealohapauole v. Shimoda, 800 F.2d 1463, 1465 (9th Cir. 1986).

> The essence of our inquiry under the Fifth, Sixth, and Eighth Amendments, as applied to the states under the Fourteenth Amendment, is whether the admission of the photographs rendered the proceedings fundamentally unfair. See Jackson v. Shanks, 143 F.3d 1313, 1322 (10th Cir.) ("[D]ue process arguments relating to the admissibility of the victims' ... autopsy photos ... will not support habeas relief 'absent fundamental unfairness so as to constitute a denial of due process of law.'" (quoting Martin v. Kaiser, 907 F.2d 931, 934 (10th Cir. 1990)))... "[W]e approach the fundamental fairness analysis with 'considerable self-restraint.' Jackson, 143

-52-

F.3d at 1322 (quoting United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990) (en banc)). .... Given the probative nature of the photographs, the gruesome character of the crime itself, and the wealth of additional evidence supporting defendant's convictions, the admission of the photographs was not so unduly prejudicial as to render the proceedings against petitioner fundamentally unfair. See Jackson, 143 F.3d at 1322. Consequently, petitioner is not entitled to relief on this ground.

Smallwood v. Gibson, 191 F.3d 1257, 1275 (10th Cir. 1999).

Although Petitioner asserts the photographs were admitted solely to inflame the jury, there was at least one permissible inference the jury could draw from the photographs, i.e., premeditation. Accordingly, the admission of the autopsy photographs did not violate Petitioner's right to due process of law and Petitioner is not entitled to federal habeas relief on the merits of this claim. See Gerlaugh v. Lewis, 898 F. Supp. 1388, 1409-10 (D. Ariz. 1995) (holding the autopsy photographs at issue were not so inflammatory or prejudicial as to render the trial fundamentally unfair).

**8. Petitioner asserts his right to due process of law was violated by the introduction of evidence regarding a prior conviction.**

In his direct appeal Petitioner asserted the trial court erred by allowed the fact of a prior conviction to be introduced to the jury. In denying this claim, the Arizona Supreme Court concluded:

Here, however, the judge permitted an expert to testify regarding his reliance on the conviction in assessing Roque's mental health. Roque does not contest that evidence of his previous conviction is the type of evidence

-53-

reasonably relied upon by experts in making mental health assessments. Under the Rules of Evidence, therefore, the evidence may be disclosed as forming the basis of an opinion without regard to its independent admissibility. See Ariz. R. Evid. 703. Roque claims, however, that the mention of the conviction was so unduly prejudicial that it outweighed the probative value of the evidence.

We agree that Roque's 1983 attempted robbery conviction had only minimal probative value in showing a lack of mental illness because the State did not produce evidence that the attempted robbery was alcohol-induced or that it was motivated by racism, which were its theories at trial. Nor did Dr. Scialli's testimony demonstrate the relevance of the 1983 conviction to his assessment of Roque's mental health. See Ex parte Vaughn, 869 So.2d 1090, 1097, 1099 (Ala. 2002) (finding probative value of prior bad acts substantially outweighed by prejudice where state 'presented nothing to indicate that the prior acts committed by [defendant] were relevant to his mental state during the shooting that occurred ... many years later').

But if the probative value of the conviction was minimal, so was any prejudicial effect. The jury heard of the conviction from at least two other experts, Dr. Potts and Dr. Rosengard, who testified that because of the age of the conviction and lack of violence involved, it did not affect their assessments of Roque's mental health. Moreover, Roque admitted doing the acts that constituted the crimes for which he was charged in this trial, so the jury did not rely on the prior conviction to conclude that Roque may have acted in conformity with it in committing the present crimes. Finally, we note that the trial judge offered to give a limiting instruction advising the jurors to consider the conviction only as information relied upon by the expert, but Roque declined the offer.

213 Ariz. at 209, 211-12, 141 P.3d at 386-87.

This conclusion was not contrary to clearly established federal law because the Court of Appeals correctly identified the governing rule and its application of the rule to the facts of

-54-

the case was not unreasonable.  See Inthavong v. Lamarque, 420 F.3d 1055, 1061 (9th Cir. 2005).

The Supreme Court has established a general principle that the admission of evidence which is extremely unfair to the defendant, including the fact of a prior conviction, may violate the defendant's right to due process.  See Dowling v. United States, 493 U.S. 342, 352, 110 S. Ct. 668, 674 (1990); Alberni v. McDaniel, 458 F.3d 860, 864 (9th Cir. 2006).  However, a state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process.  See Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996).  The improper admission of unduly prejudicial evidence violates a defendant's right to due process only when there were no permissible inferences the jury could have drawn from the evidence.  See Windham v. Merkle, 163 F.3d 1092, 1103 (9th Cir. 1998).

Even assuming that the evidence was unduly prejudicial, the jury could draw permissible inferences from the fact of Petitioner's prior conviction, i.e., that the fact of the conviction did or did not weigh in favor of a particular expert's opinion regarding Petitioner's mental state at the time of the crimes.  Accordingly, the state court's decision denying relief on the merits of the claim was not clearly contrary to nor an unreasonable application of federal law and Petitioner is not entitled to relief on the merits of the claim.

**9. Petitioner alleges that he was subjected to prosecutorial misconduct.**

Petitioner raised twenty-eight specific claims of prosecutorial misconduct in his direct appeal. The state Supreme Court thoroughly addressed these claims, stating:

> Roque asserts that twenty-eight incidents of prosecutorial misconduct occurring throughout the guilt and sentencing proceedings denied him a fair trial. We have addressed fifteen of the alleged incidents elsewhere in this opinion, and, of those, only the State's failure to disclose the scope of Dr. Ben-Porath's testimony warrants inclusion here. Roque also alleges thirteen additional incidents, which we now address.

213 Ariz. at 228, 141 P.3d at 403. "After reviewing each incident for error," the state court assessed "whether the incident should count toward [Petitioner's] prosecutorial misconduct claim." After the specific incidents contributing to a finding of misconduct were identified, the court went on to "evaluate their cumulative effect on the trial." 213 Ariz. at 230, 141 P.3d at 405.

The state Supreme Court then concluded:

> Under the Hughes test, we cannot say that the cumulative effect of the misconduct here so permeated the entire atmosphere of the trial with unfairness that it denied Roque due process. [] We recognize in particular that the prosecutors' failure to disclose the scope of Dr. Ben-Porath's testimony was improper and potentially prejudicial, but the defense did not make a good faith effort to resolve that discovery dispute. As a result, we cannot now assess the prejudice the defendant may ultimately have suffered. The cumulative effect of the incidents of misconduct in this case thus does not warrant reversal.

213 Ariz. at 230, 141 P.3d at 405.

-56-

Only those specific acts of the prosecutor alleged to be instances of prosecutorial misconduct that were exhausted in state court would be properly considered in this habeas action.[14] The undersigned concludes the state court's determination that the asserted instances of prosecutorial misconduct did not deprive Petitioner of his right to procedural due process of law was not clearly contrary to federal law.

A habeas petitioner is not entitled to federal habeas relief based on a prosecutor's improper statements unless the statements infected the entire proceeding and rendered it fundamentally unfair in violation of defendant's right to due process of law. See Darden v. Wainright, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471 (1986), quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 1871 (1974); Davis v. Woodford, 384 F.3d 628 (9th Cir. 2004).

---

[14] Petitioner contends the prosecutor committed misconduct by introducing the testimony of Dr. Ben Porath; by telling the jury Petitioner had said he had a preexisting conflict with Mr. Sodhi; by calling Petitioner a terrorist and comparing Petitioner to Osama Bin Laden; by discrediting the defense experts with harassment and innuendo; by being insolent and dismissive about Dr. Toma's qualifications; by calling the defense experts "so called medical experts presented by the defense" and calling Dr. Potts a "so called" psychiatrist; by saying he was using the term "doctor" "loosely" with regard to the defense experts; by telling the jury they could not consider Petitioner's IQ or any mental impairment because it did not excuse his conduct. Petitioner further asserts prosecutorial misconduct because, he asserts, the prosecution's statement that he was urging them not to accept the "distorted" story told via the expert witnesses testifying as to what Petitioner had said to them constituted a comment on Petitioner exercising his right to remain silent. Petitioner additionally argues the prosecutor committed misconduct by eliciting testimony from Dr. Scialli that he had previously worked with Petitioner's defense counsel and by repeatedly telling the jury that Petitioner was a drunk, an alcoholic, and a racist. Petitioner notes his defense counsel moved for a mistrial based on the prosecutor's misconduct, which motion was denied.

> On a petition for a writ of habeas corpus, the standard of review for a claim of prosecutorial misconduct is the narrow one of due process, and not the broad exercise of supervisory power. Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, [] (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 642, 94 S. Ct. 1868, [] (1974)). Thus, to succeed, [the petitioner] must demonstrate that it so infected the trial with unfairness as to make the resulting conviction a denial of due process. Donnelly, 416 U.S. at 643, 94 S. Ct. 1868.

Renderos v. Ryan, 469 F.3d 788, 799 (9th Cir. 2006).

> Thus, we must examine the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process. Before granting relief, we must also determine that any constitutional error was not harmless. Specifically, we must find that the error had substantial and injurious effect or influence in determining the jury's verdict. Only if the record demonstrates that the jury's decision was substantially influenced by the error or there is grave doubt about whether an error affected a jury will [the petitioner] be entitled to relief.

Sechrest v. Ignacio, 549 F.3d 789, 807-08 (9th Cir. 2008) (internal citations and quotations omitted).

To be entitled to relief on this claim, Petitioner must demonstrate that the prosecutor's comments "had [a] substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623, 113 S. Ct. 1710, 1714 (1993), quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253. In making this determination, the Court must look at the nature of the prosecutor's comments, the nature and quantum of the evidence before the jury, the arguments of opposing counsel, the judge's charge, and whether

-58-

the alleged errors were isolated or repeated.  <u>See</u> <u>Billings v.</u>
<u>Polk</u>, 441 F.3d 238, 250 (4th Cir. 2006).

The United States Supreme Court has concluded that
habeas relief on this type of claim is not appropriate unless the
prosecutor manipulated or misstated the evidence or implicated
other specific rights of the defendant, such as his right to
counsel or his right to remain silent.  <u>See</u> <u>Darden</u>, 477 U.S. at
181-82, 106 S. Ct. at 2471-72.  A prosecutor's statements might
satisfy the standard if they are racially motivated or if they
attempt to establish guilt by association. <u>See</u> <u>United States v.</u>
<u>Wolfswinkel</u>, 44 F.3d 782, 787 (9th Cir. 1995).

The complained of statements were not racially motivated
insofar as they did not disparage Petitioner because of his race
or his associations.  The prosecutor did not manipulate the
evidence or wrongfully implicate Petitioner's invocation of his
right to counsel.  The statement alleged by Petitioner to have
implicated his right to remain silent did not explicitly do so,
instead it encouraged the jury not to accept the version of
events proffered by the defense expert witnesses, based on what
Petitioner had told them.  Neither did the prosecutor explicitly
implicate Petitioner had exercised his right to remain silent
after his arrest.  Additionally, Petitioner's counsel
successfully argued to limit the effect of the improper
statements by the prosecutor and to challenge the prosecutor's
characterization of factual evidence.

The contested statements made by Petitioner's prosecutor
reflected emotional reactions and attempts to elicit emotional

responses to the evidence from the jury, which, even if classified as improper, undesirable, or even universally condemned, did not violate Petitioner's right to due process. See Darden, 477 U.S. at 180-81, 106 S. Ct. at 2470-71; Hovey v. Ayers, 458 F.3d 892, 923 (9th Cir. 2006); Allen v. Woodford, 395 F.3d 979, 997 (9th Cir. 2005).

The Magistrate Judge concludes the statement of the prosecutor did not so infect the trial with unfairness as to make the resulting conviction a violation of due process. See Williams v. Borg, 139 F.3d 737, 745 (9th Cir. 1998); Thompson v. Borg, 74 F.3d 1571, 1576-77 (9th Cir. 1996) (denying habeas relief based on a due process claim regarding a prosecutor's comments in closing argument because, in part, the jury returned a verdict of second degree murder rather than first degree murder). Accordingly, the state courts' decision that Petitioner was not deprived of a constitutional right by the prosecutor's challenged comments was not clearly contrary to federal law and Petitioner is not entitled to federal habeas relief on the merits of this claim.

**10. Petitioner contends he was denied a fair trial as a result of testimony by Dr. Jack Potts.**

In his amended habeas petition Petitioner contends Dr. Potts committed perjury by testifying Petitioner had told him Petitioner had been to one of the gas stations the day or week before the events of September 15, 2001. See Docket No. 14. Petitioner has arguably not exhausted this claim for relief. In his state action for post-conviction relief Petitioner argued Dr.

-60-

Potts committed perjury by stating Petitioner was intoxicated at the time of the crimes. This is a different factual premise for the asserted perjury claimed in the habeas petition. However, regardless of any failure to fully exhaust this claim, the claim may denied on the merits. Petitioner is not entitled to relief based on a single alleged instance of perjury unless it rendered his trial fundamentally unfair. See Estelle, 502 U.S. at 67-68, 112 S. Ct. at 479-80. Although Dr. Potts did testify that Petitioner had told Dr. Potts he had been to one of the gas stations involved in the crimes prior to September 15, 2001, this testimony did not render Petitioner's trial fundamentally unfair. Defense counsel did an admirable job of eliciting testimony contradicting the prosecution's assertion that Petitioner had been to one or both of the gas stations prior to the date of the shootings and that Petitioner had previously had negative interactions with Mr. Sodhi. Accordingly, habeas relief on this claim may properly be denied.

**11. Petitioner contends his trial and appellate counsel were both unconstitutionally ineffective.**

Petitioner raised ineffective assistance of counsel claims in his state action for post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure. The state court determined that Petitioner was not entitled to relief from his convictions and sentences based on these claims.

In his action for state post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure, Petitioner alleged he was denied his right to the effective assistance of

trial counsel because his counsel failed to submit or request adequate jury instructions regarding the insanity defense. Petitioner also asserted his counsel was ineffective because he did not object to Petitioner being forced to wear a stun belt during the trial. Petitioner further alleged his rights were violated because his counsel did not object to Petitioner's being forced to take anti-psychotic medications during his trial. Petitioner further alleged his trial counsel's performance was deficient because counsel failed to adequately cross-examine the state's key expert witness. Petitioner argued his trial counsel was incompetent because he failed to object to Dr. Ben Porath's inconsistent statements. Additionally, Petitioner asserted his trial counsel's performance was unconstitutionally deficient because he failed to secure a change of venue.

Petitioner also maintains his counsel was ineffective because he failed to move for a competency hearing close to the date of the trial and because he did not move for a <u>Willits</u> jury instruction. Petitioner alleges his trial counsel was ineffective because he failed to challenge the admission of a prior conviction from 1983 as not authenticated. Petitioner also asserts his trial counsel was ineffective because he did not object to the admission of the autopsy photographs and because he did not object to prosecutorial misconduct.

With regard to his appellate counsel, Petitioner asserted counsel failed to argue there was insufficient evidence to convict Petitioner of first degree murder and insufficient evidence to convict Petitioner of drive-by shooting at the gas

stations, and insufficient evidence to convict Petitioner of drive-by shooting at the Mesa residence. Petitioner also alleged his appellate counsel was ineffective for failing to argue a violation of Petitioner's right to be free of double jeopardy caused by the charge of attempted murder and drive by shooting at the Mobil gas station. Additionally, Petitioner asserted his appellate counsel was ineffective for failing to contend that being forced to wear a stun belt at his trial and being forcibly medicated during his trial violated Petitioner's constitutional rights, warranting reversal of his convictions.

The state trial court summarily denied the ineffective assistance of counsel claims raised in Petitioner's Rule 32 action. The Arizona Court of Appeals and the Arizona Supreme Court declined to review or reverse this decision. The entire record in this matter having been thoroughly reviewed, including the recording of oral argument in Petitioner's direct appeal proceedings, the Magistrate Judge concludes the state courts' resolution of Petitioner's ineffective assistance of counsel claims was not contrary to federal law.

To state a claim for ineffective assistance of counsel, a petitioner must show that his attorney's performance was deficient and that the deficiency prejudiced the petitioner's defense. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). The petitioner must overcome the strong presumption that counsel's conduct was within the range of reasonable professional assistance required of attorneys in that circumstance. See id., 466 U.S. at 687, 104 S. Ct. at 2064.

To establish prejudice, the petitioner must establish that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. See also, e.g., Martin v. Grosshans, 424 F.3d 588, 592 (7th Cir. 2005). Additionally, prejudice from counsel's allegedly deficient performance is less likely when the case against the defendant is strong. See, e.g., Avila v. Galaza, 297 F.3d 911, 924 (9th Cir. 2002) (collecting the cases so holding).

To prevail on the merits of a habeas claim of ineffective assistance of counsel, it is the habeas applicant's burden to show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner. "An unreasonable application of federal law is different from an incorrect application of federal law." Woodford, 537 U.S. at 25, 123 S. Ct. at 360 (internal quotations omitted). Vague or conclusory claims do not establish evidence sufficient to conclude the state court's decision was clearly contrary to federal law. See Jones v. Gomez, 66 F.3d 199, 205 (9th Cir. 1995); James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).

The Strickland prejudice requirement applies to claims of ineffective assistance of appellate counsel:

> The Sixth Amendment right to effective assistance of counsel includes the right to effective appellate counsel. However, appellate counsel need not advance every possible argument, even those that are non-frivolous, and should instead concentrate his advocacy on winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. The

> two-part <u>Strickland</u> test, which the Court has used in evaluating claims of ineffective assistance of trial counsel, supra, also guides an analysis of claims of ineffective assistance of appellate counsel.

<u>Davis v. Singletary</u>, 853 F. Supp. 1492, 1549 (M.D. Fl. 1994) (internal quotations and citations omitted).

To succeed on an assertion his counsel's performance was deficient because counsel failed to raise a particular argument, either in his trial proceedings or in his appeals, the petitioner must establish the argument was likely to be successful, thereby establishing that he was prejudiced by his counsel's omission. <u>See</u> <u>Tanner v. McDaniel</u>, 493 F.3d 1135, 1144 (9th Cir. 2007); <u>Weaver v. Palmateer</u>, 455 F.3d 958, 970 (9th Cir. 2006). The appropriate inquiry is not whether raising a particular issue on appeal would have been frivolous, but whether there is a reasonable probability raising the issue would have led to the reversal of Petitioner's conviction. <u>See</u> <u>Miller v. Keeney</u>, 882 F.2d 1428, 1434 (9th Cir. 1989). If Petitioner had only a remote chance of obtaining reversal based upon' a specific issue, neither element of the <u>Strickland</u> test is satisfied. <u>Id.</u>

A defendant's counsel's decisions regarding jury instructions are fairly construed as a strategic decision. <u>See</u> <u>Scott v. Elo</u>, 302 F.3d 598, 607 (6th Cir. 2002). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." <u>Strickland</u>,

-65-

466 U.S. at 690-91, 104 S. Ct. at 2066.

> Under AEDPA, we apply Strickland to each
> individual case, irrespective of whether the
> precise fact pattern at issue has been
> considered previously by the Supreme Court.
> See Williams, 529 U.S. at 391, 120 S. Ct. 1495
> (That the Strickland test "of necessity
> requires a case-by-case examination of the
> evidence ... obviates neither the clarity of
> the rule nor the extent to which the rule must
> be seen as 'established' by this Court."].
> "[B]ecause the Strickland standard is a
> general standard, a state court has even more
> latitude to reasonably determine that a
> defendant has not satisfied that standard ."
> Knowles v. Mirzayance, --- U.S. ----, 129
> S.Ct. 1411, 1420, [] (2009) []. We do not,
> however, afford the state courts a blank check
> to determine, at their whim, whether an
> attorney's conduct was reasonable or
> unreasonable...
> Where counsel's failure to investigate was
> both objectively unreasonable and prejudicial,
> and where the state court acted unreasonably
> in finding to the contrary, we will grant a
> petition for habeas corpus.

Richter v. Hickman, 578 F.3d 944, 951-52 (9th Cir. 2009).

The Arizona state court's decision in Petitioner's Rule 32 proceedings, that Petitioner was not denied his right to the effective assistance of counsel, was not clearly contrary to nor an unreasonable application of federal law and Petitioner is not entitled to federal habeas relief on his claim that he was deprived of the effective assistance of counsel. Compare Jones v. Ryan, 583 F.3d 626, 640 (9th Cir. 2009) (holding counsel was ineffective for (1) failing to secure the appointment of a mental health expert; (2) failure to timely move for neurological and neuropsychological testing; and (3) failure to present additional mitigation witnesses and evidence).

**12. Petitioner alleges the indictment was defective because it failed to allege aggravating factors and because the state was granted a sixty-day continuance to consult the government of India regarding their opinion on seeking the death penalty.**

Respondents assert Petitioner did not raise a claim for relief based on the indictment or the continuance in the state courts in his direct appeal or his Rule 32 action. Accordingly, Respondents argue, Petitioner has procedurally defaulted the claims asserted in his twelfth ground for habeas relief.

Petitioner did not raise these claims in his direct appeal or in his state action pursuant to Rule 32, Arizona Rules of Criminal Procedure.

A federal court may not grant habeas relief to a state prisoner unless the prisoner has first exhausted his state court remedies. <u>See</u> 28 U.S.C. § 2254(b)(1).

> A petitioner satisfies the exhaustion requirement by fully and fairly presenting each claim to the highest state court. A petitioner fully and fairly presents a claim to the state courts if he presents the claim (1) to the correct forum, <u>see</u> § 2254(c); (2) through the proper vehicle,; and (3) by providing the factual and legal basis for the claim. Full and fair presentation additionally requires a petitioner to present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief.

<u>Scott v. Schriro</u>, 567 F.3d 573, 582 (9th Cir. 2009) (internal citations omitted).

Petitioner has procedurally defaulted his claims by failing to raise them in his direct appeal or in his *pro se* first state action for post-conviction relief. Arizona's Rules of

Criminal Procedure bar Petitioner from returning to the state courts with the claim. Accordingly, the claims are exhausted but procedurally defaulted. Relief may not be granted on the merits of the claims unless Petitioner establishes cause and prejudice for his procedural default.

Petitioner has not established cause for his procedural default of his habeas claims in the state courts. Under the "cause and prejudice" test, Petitioner bears the burden of establishing that some objective factor external to the defense impeded his compliance with Arizona's rules regarding the timely assertion of these claims. See, e.g., Moorman v. Schriro, 426 F.3d 1044, 1058 (9th Cir. 2005). To establish prejudice, Petitioner must show that the alleged constitutional error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 1595 (1982). See also Correll v. Stewart, 137 F.3d 1404, 1415-16 (9th Cir. 1998).

Generally, a petitioner's lack of legal expertise is not cause to excuse procedural default. See Hughes v. Idaho State Bd. of Corr., 800 F.2d 905, 908 (9th Cir. 1986) Additionally, allegedly ineffective assistance of appellate counsel does not establish cause for the failure to properly exhaust a habeas claim in the state courts unless the specific Sixth Amendment claim providing the basis for cause was itself properly exhausted. See Edwards v. Carpenter, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591 (2000); Coleman, 501 U.S. at 755, 111 S. Ct. at

-68-

2567 ("We reiterate that counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation"); <u>Deitz v. Money</u>, 391 F.3d 804, 809 (6th Cir. 2004) ("[a]ttorney error does not constitute cause to excuse a procedural default unless counsel's performance was constitutionally deficient.").

Petitioner has not established that either alleged constitutional error asserted in this claim for relief so infected his criminal proceedings as to violate his right to due process. Petitioner has not established that any delay in his trial for sixty days affected his ability to adequately prepare his defense. Petitioner has not established that any failure to allege aggravating factors in the indictment prejudiced his defense at trial. Therefore, because Petitioner has not shown cause and prejudice regarding these procedurally defaulted claims, the Court may not grant relief on the merits of the claims.

**13. Petitioner contends there was insufficient evidence presented at trial to support his convictions for drive-by shooting and a finding of premeditation on the charge of attempted first-degree murder.**

In his amended habeas petition Petitioner asserts that the state failed to prove each and every element of the charged offenses with regard to his conviction for first-degree murder and his convictions for the three drive-by shootings. Petitioner contends that the state did not prove he premeditated the murder of Mr. Sodhi. Petitioner contends that there was insufficient evidence to sustain his conviction for drive-by shooting with

regard to the shooting at the Chevron station, noting Mr. Ledesma testified "he saw nothing at all." Amended Petition at 32. Petitioner also notes Mr. Khalil testified his back was to the window when the shots were fired at the Mobil station. _Id._ Petitioner also alleges "Sahak stated he saw Petitioners (sic) truck pull up and stop while he was in his house with the door closed. He then stated he hid behind a wall and heard a gunshot..." _Id._ Petitioner correctly notes that "[n]ot one witness testify stated they saw Petitioner shoot from his vehicle." _Id._, citing Ariz. Rev. Stat. § 13-1209.

In his Rule 32 Petitioner argued there was insufficient evidence to convict him of each of the three drive-by shootings and accompanying 12-year sentences. The state court denied these claims without comment. The state court's decision was not clearly contrary to federal law.

In his amended petition Petitioner claims a violation of his Fourteenth Amendment right to due process, i.e., he contends there was insufficient evidence to sustain his convictions for drive-by shooting. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." _In re Winship_, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970). To determine whether sufficient evidence was introduced at trial to support a habeas petitioner's conviction, the Court must decide if, "viewing the evidence in the light most favorable to the prosecution, _any_ rational trier of fact could have found the essential elements

of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). See also McDaniel v. Brown, 130 S. Ct. 665, 673 (2010); McMillan v. Gomez, 19 F.3d 465, 468-469 (9th Cir. 1994).

Under this standard, a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not appear affirmatively in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution. Jackson, 443 U.S. at 326, 99 S. Ct. at 2793. See also McDaniel, 130 S. Ct. at 673.

> [I]t is the province of the jury to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[] As the Ninth Circuit has explained, The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached.[] While mere suspicion or speculation cannot be the basis for creation of logical inferences... [c]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.

Atwood v. Schriro, 489 F. Supp. 2d 982, 1002-03 (D. Ariz. 2007) (internal citations and quotations omitted).

> In reviewing a sufficiency of the evidence challenge, we ask whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Because the state habeas court did not address the merits of this claim, we review de novo whether sufficient evidence exists to support Schad's murder conviction.
> Circumstantial evidence and reasonable inferences drawn from it may properly form the basis of a conviction.

Schad, 595 F.3d at 917 (internal citations and quotations omitted).

The Court may presume the state court's conclusion, although implied in this matter, that the conviction was supported by the evidence is correct. See Crow v. Eyman, 459 F.2d 24, 25 (9th Cir. 1972). Petitioner bears the burden of proving that the record is so totally devoid of evidentiary support for the challenged conviction as to violate due process. Id. Circumstantial evidence is sufficient to support a petitioner's guilty verdict. Jackson, 442 U.S. at 324-25, 99 S. Ct. at 2792; Jones v. Wood, 207 F.3d 557, 563 (9th Cir. 2000) (finding sufficient evidence to support a murder conviction when the evidence was almost entirely circumstantial and relatively weak); Sera v. Norris, 400 F.3d 538, 547 (8th Cir. 2005). In reviewing a sufficiency of the evidence claim, a federal habeas court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence, and the credibility of the witnesses. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789.

The record in this matter having been thoroughly reviewed, including all of the testimony of all of the witnesses and each of Petitioner's pleadings in state court and in this habeas action, the Magistrate Judge concludes there was sufficient evidence that a reasonable jury could find Petitioner guilty of the crimes charged, specifically first-degree murder and the drive-by shootings. Although no eyewitness testified they saw Petitioner actually shooting a weapon, eyewitnesses testified

they saw Petitioner alone in his truck setting down a weapon immediately after the shots were fired apparently from his truck into the residence in Mesa and at the Mobil station. Ballistics experts testified that tests had determined the shots fired at each of the three locations, including the five shots fired at Mr. Sodhi, were fired from weapons found in Petitioner's home. Petitioner told each psychiatrist or psychologist who examined him that he had committed the crimes. Accordingly, the state court's decision denying these claims was not clearly contrary to federal law nor an unreasonable application thereof and Petitioner is not entitled to relief on this claim.

**14. Petitioner asserts his Sixth Amendment right to a jury trial was violated because the state failed to prove the aggravating factors to a jury beyond a reasonable doubt.**

Petitioner asserts that a judge, rather than a jury, found the aggravating factors used to enhance his non-capital sentences under state sentencing statutes. Petitioner asserts the aggravating factors were not presented to a jury, in violation of his Sixth Amendment right to a fair trial, including an impartial jury.

Petitioner exhausted this claim in the state courts. In his Rule 32 action Petitioner asserted that the imposition of aggravated sentences on Counts 2, 3, 4, 5, and 6, violated his rights pursuant to <u>Blakely v. Washington</u>, i.e., that aggravating factors must be determined by a jury rather than a judge. The state courts summarily denied the claim.

In <u>Blakely v. Washington</u>, 542 U.S. 296, 303-04, 124 S. Ct. 2531, 2537-38 (2004), the United States Supreme Court

determined that a defendant in a criminal case is entitled to have a jury determine beyond a reasonable doubt any fact that increases his sentence beyond the "statutory maximum," unless the fact was admitted by the defendant or was based on a prior conviction. The United States Supreme Court clarified that the term "statutory maximum" was to be interpreted as the presumptive sentence, or the presumptive sentence given the facts as found by the jury or admitted by the defendant, rather than the maximum statutory sentence allowed. See Allen v. Reed, 427 F.3d 767, 772 (10th Cir. 2005) ("In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.").

> Many constitutional errors are not such as to "necessarily render[ ] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Washington v. Recuenco, 548 U.S. 212, 218-19, 126 S.Ct. 2546, [] (2006) (quoting Neder v. United States, 527 U.S. 1, 9, 119 S.Ct. 1827, [] (1999)). So long as the "defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis." Id. at 218, 126 S.Ct. 2546 (quoting Neder, 527 U.S. at 8, 119 S.Ct. 1827) (alteration in original). Accordingly, the Supreme Court has held that a state court's failure to submit a sentencing factor to the jury, a Sixth Amendment violation under Blakely, is not structural error and is subject to harmless error analysis. Id. at 221-22, 126 S.Ct. 2546.

Besser v. Walsh, 601 F.3d 163, 188-89 (2d Cir. 2010).

> Having found that [the petitioner's] sentence violates Blakely and Apprendi, we must next consider whether the constitutional error was

-74-

> harmless. Habeas relief is only appropriate if
> the constitutional error harmed the
> petitioner. <u>See</u> <u>Jensen v. Romanowski</u>, 590 F.3d
> 373, 378 (6th Cir. 2009). "Failure to submit
> a sentencing factor to the jury, like failure
> to submit an element to the jury, is not
> structural error," and accordingly, such error
> is subject to harmless error analysis.
> <u>Washington v. Recuenco</u>, 548 U.S. 212, 221, 126
> S.Ct. 2546, [] (2006).

<u>Villagarcia v. Warden, Noble Corr. Inst.</u>, 599 F.3d 529, 536 (6th Cir. 2010).

Prior to the imposition of Petitioner's sentences, the jury heard testimony regarding the existence of aggravating and mitigating circumstances to evaluate whether Petitioner should be sentenced to death pursuant to his conviction for first-degree murder. The jury found that, in the commission of the murder of Mr. Sodhi, Petitioner knowingly caused a grave risk of death to another person, i.e., Mr. Ledesma.

The Arizona courts have interpreted <u>Blakely</u> to allow for the imposition of an aggravated sentence founded partially on facts not found by a jury if at least one aggravating factor is compliant with <u>Blakely</u>, i.e., found by a jury or admitted by the defendant. See <u>Arizona v. Martinez</u>, 210 Ariz. 578, 115 P.3d 618 (2005); <u>Arizona v. Henderson</u>, 210 Ariz. 561, 115 P.3d 601 (2005).

Because an Arizona defendant may receive an aggravated sentence based on a single aggravating factor, <u>see</u> Arizona Revised Statutes Annotated § 13-702(B), the federal courts have concluded that if a single Blakely-compliant or Blakely-exempt aggravating factor establishes the facts "legally essential" to punishment, a defendant's constitutional right to a jury trial

is not violated by the fact that other factors were found by a judge in the context of sentencing the defendant. See, e.g., Stokes v. Schriro, 465 F.3d 397, 402-03 (9th Cir. 2006).

Arizona's sentencing scheme, as iterated in Martinez, was upheld upon review by the United States Supreme Court. See Martinez v. Arizona, 546 U.S. 1044, 126 S. Ct. 762 (2005). Arizona's response to Blakely as explained in Martinez has been found to be not clearly contrary to federal law. See Stokes, 465 F.3d at 402-03 (holding "the Arizona state courts' interpretation of these [sentencing] provisions does not contradict clearly established federal law").

Moreover, even if a Blakely-compliant aggravating factor was not present, any resulting error was harmless. See Washington v. Recuenco, 548 U.S. 212, 222-23, 126 S. Ct. 2546, 2553 (2006) (holding that Blakely error is subject to harmless error review). Having reviewed the record in this matter, the Magistrate Judge concludes that a reasonable juror could find beyond a reasonable doubt the aggravating factors which the trial court considered in imposing aggravated sentences. The jury found Petitioner guilty of each crime charged in the amended indictment, including first-degree murder, which crimes were used to aggravate Petitioner's sentence, and also found Petitioner had caused a grave risk of death to Mr. Ledesma.

**III Conclusion**

All but one of Petitioner's claims for habeas relief was raised in and denied by the state courts. Petitioner has not shown cause for, nor prejudice arising from his procedural

default of the claims which were not exhausted. With regard to the claims which were presented to and denied by the state courts, the state courts' decisions denying the claims raised by Mr. Roque in his amended habeas petition were not clearly contrary to nor an unreasonable application of federal law. Accordingly, the petition may be denied and dismissed.

**IT IS THEREFORE RECOMMENDED** that Mr. Roque's Petition for Writ of Habeas Corpus be **denied and dismissed with prejudice**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna-Tapia, 328 F.3d 1114,

1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

Pursuant to 28 U.S.C. foll. § 2254, R. 11, the District Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The undersigned recommends that, should the Report and Recommendation be adopted and, should Petitioner seek a certificate of appealability, a certificate of appealability should be denied because Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C.A § 2253(c)(2).

DATED this 2nd day of August, 2010.

_____
Mark E. Aspey
United States Magistrate Judge